**STATE of Utah, Plaintiff and Respondent,**

v.

**Darrell Graff HAFEN, Defendant and Appellant.**

**No. 15885.**

Supreme Court of Utah.

March 22, 1979.

Craig Stephens Cook, Salt Lake City, for defendant and appellant.

R. Paul VanDam, Salt Lake City, for plaintiff and respondent.

HYDE, District Judge:

The defendant Darrell Graff Hafen appeals his conviction by a jury of Theft by Deception, in violation of 76–6–405, U.C.A., 1953. His claims of error are:

(1) that he was denied a speedy trial; and

(2) that the trial court erred in failing to give defendant's requested jury instruction referring to specific intent to defraud.

Concerning defendant's contention that he was not given a speedy trial, the essential facts are these: A State complaint was

filed against the defendant March 4, 1977, and a warrant was issued thereon. Defendant was brought to Salt Lake City in July of 1977 from New York State. On July 11, 1977, defendant was detained in the Salt Lake County Jail pursuant to the complaint. On that same date, defendant was brought before the City Court, where the complaint was read and bail set at $50,000.00. The defendant, present without counsel, was referred to the Legal Defender attorney. The court also at that time ordered hearing set for July 26, 1977.

On July 27, 1977, defendant appeared without counsel and moved for a mistrial. The motion was denied. Defendant's motion for the court to appoint private counsel was also denied. Defendant at that time objected to the State proceeding further in the matter because a motion to transfer jurisdiction to the United States District Court had been filed. A handwritten motion to stay proceedings before the City Court until Chief Judge Willis Ritter could rule on jurisdiction was filed by the defendant on July 28, 1977. The July 27th hearing was continued to August 9 because of evacuation of the building due to a gasoline leak. On August 9, 1977, the attorney from the Legal Defender's office appeared on behalf of the defendant, and informed the court that the Federal Government had removed the defendant from jail and transported him to Los Angeles County in California, pursuant to a Writ of Habeas Corpus Ad Prosequendum, and at that time filed a motion and demand for a speedy trial. The court ordered the hearing continued to August 23rd on stipulation.

On August 23rd, the defendant was not present in court, and the hearing was therefore continued to October 11, 1977. On September 19, 1977, defendant's attorney appeared without defendant and moved for a dismissal based upon the failure to obtain a speedy trial. The motion was denied, and hearing was continued to October 11, 1977, the attorney appeared without defendant and the court was told that defendant was still in California. A motion to dismiss was again made, and denied. The court ordered a continuation of the arraignment until No-vember 11, 1977. On November 11, the court ordered the arraignment continued to December 9. On December 11, 1977, by stipulation of counsel, the court ordered the hearing reset to December 13. On December 13, defendant was returned to Salt Lake County Jail, and appeared in court without counsel. He refused to let a Legal Defender attorney represent him. The court ordered his current attorney appointed to represent him, and ordered the hearing continued to January 12, 1978.

The court also ordered a bond-reduction hearing scheduled for December 14. This hearing was continued to December 15, wherein bail was reduced to $10,000.00. On January 12, 1978, a preliminary hearing was held, at which time the defendant was bound over to the District Court to stand trial. The court ordered that the bond remain the same, and set an arraignment date in District Court for January 20, 1978. On January 12, 1978, appellant's present counsel filed a motion for dismissal based on failure to provide defendant a speedy trial. An Information was filed by the County Attorney on January 19, and arraignment was held on January 20 before a District Court Judge. Trial was set for March 9, 1978. On March 6, 1978, appellant's counsel filed a second motion for dismissal based upon failure to provide defendant a speedy trial. Trial was held March 9th and 10th, 1978. Defendant was able to post bond in January, thus being incarcerated approximately six months, including the time spent in California, which accounted for four and one-half months of that time.

As to whether appellant's right to a speedy trial was violated under Federal law, a leading and analytical case in this area is *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In that case, petitioner was arrested and subsequently subjected to sixteen continuances and spent ten months in jail until he was able to post bond. He filed a motion to dismiss after the eleventh continuance, but the motion was denied. Four years after his release on bond, he was finally tried. At the trial, his motion to dismiss due to

lack of speedy trial was again denied. The conviction was affirmed by the Kentucky Court of Appeals. Writ of Habeas Corpus was sought in the United States District Court and rejected, with leave to appeal. The Court of Appeals affirmed, as did the United States Supreme Court. In so doing, the Supreme Court set forth certain guidelines to be followed in determining whether a defendant has been denied a speedy trial, and specifically rejected a fixed time period and demand-waiver approach:

> The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.
>
> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which the court should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of Delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.[1]

The court went on to detail and expound some of these factors:

> The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance . . ., the length of delay that will provoke such an inquiry is necessarily dependent upon the particular circumstances of the case. . . .
>
> Closely related to the length of delay is the reason . . . that justified the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason, such as negli-

gence or over-crowded courts, should be weighed less heavily, but nevertheless should be considered, since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.[2]

The court spoke to the fourth criteria, prejudice to the defendant, as follows:

> . . . prejudice . . . should be assessed in light of the interest of defendant's which the speedy trial right was designed to protect. This court has identified three such interests: (i) to prevent oppressive pre-trial incarcerations; (ii) to minimize anxiety and concern for the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last.[3]

The court finally concluded:

> We regard none of the four factors identified above as either necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Rather, they are related factors, and must be considered together with such other circumstances as may be relevant. . . .[4]

■ Appellant contends that the length of delay must include the four and one-half months that he was incarcerated in California. It should be noted that the first motion to dismiss for lack of speedy trial was not filed until after the appellant had been removed from the jurisdiction of Utah to California. Whether the period of time is considered to be the one and one-half months he was in the Salt Lake County Jail, or the total of six months including California, does not appear to be relevant. The fact is, he was outside the jurisdiction, and thereby the matter could not proceed, because he was charged with a felony and his presence is necessary. The reasons for the delay appear to be appropriate in this instance. Some of the delay was due to

1. 407 U.S. 2191–2192, 92 S.Ct. 523–524, 33 L.Ed.2d 116, 117.

2. 407 U.S. 524, 92 S.Ct. 2192, 33 L.Ed.2d 117.

3. 407 U.S. 525, 92 S.Ct. 2193, 33 L.Ed.2d 118.

4. Id.

appellant's own actions, such as refusing a Legal Defender attorney as his counsel, requesting appointment of private counsel, appointment of new counsel upon his return from California, and withdrawal of the Judge from hearing the case.

As to the fourth factor, prejudice to the defendant, appellant concedes in his brief that his defense was not substantially impaired by the pre-trial delay. The delays were not all caused by the State, and those that were appear to be appropriate and necessary under the circumstances, and no prejudice resulted to appellant's trial or the preparation thereof.

As to whether appellant's right to speedy trial under the Utah Constitution and Utah Statutory and Case Law was violated, seems to be answered in the case of *State v. Archuletta,* Utah, 577 P.2d 547, wherein it was stated:

> There is no doubt about the importance of complying with the requirements of both the United States and Utah Constitutions. The one accused of a crime is entitled to prompt trial setting and disposition of the charge if he so desires and requests. The purpose of those Constitutional provisions is to guard against any *intentional delay* which may be oppressive or persecutorial in nature. In order to avoid any such baneful effect, the requirement of the law should be respected and complied with insofar as can be achieved within the practical operation of the courts. However, the court does not lose jurisdiction because of such a delay, and unless there is some *intentional delay of an oppressive character* which results in prejudice to the defendant, the processes of justice should not be wholly defeated thereby. It is for this reason that this court has consistently held that the statutory time within which a trial shall be held is directory, and not mandatory. [Emphasis added.]

The facts of this case do not show an intentional delay of an oppressive character resulting in prejudice to the defendant. The defendant's right to a speedy trial was not abused, and the trial court was correct in refusing to dismiss the action. The right to a speedy trial is meant to be a shield against oppression, and not a sword to be used to decapitate the processes of justice.

The other point raised by appellant is that the trial court committed error in failing to give appellant's requested jury instruction, referring to specific intent to defraud. The appellant offered a jury instruction which stated as follows:

> Even though one makes, draws, utters or delivers a check knowing that at that time he does not have sufficient funds in the bank on which it is drawn to pay it, he does not have the requisite specific intent to defraud if he in fact has good reason to believe and honestly does believe that it will be paid upon presentment for payment.

The court instructed the jury in regard to the elements of the offense that they must find beyond a reasonable doubt:

3. The property was obtained by deception;

4. That the defendant acted with a purpose to deprive the owner of said property.

They were further instructed that the term "by deception" means:

> . . . when a person intentionally:
>
> a) creates or confirms by words or conduct an impression of law or fact that is false, and that the actor does not believe it to be true, and that is likely to affect the judgment of another in the transaction, or
>
> b) fails to correct a false impression of law or fact that the actor previously created or confirmed by words or conduct that is likely to affect the judgment of another, and that the actor does not now believe to be true.

And further, that the term "purpose to deprive" means:

> . . . to have the conscious object to:
>
> a) withhold property permanently or for so extended a period, or to use under such circumstances that a substantial portion of its economic value or the use and benefit thereof would be lost; or

b) restores the property only upon payment of reward or other compensation; or

c) disposes of the property under circumstances that make it unlikely that the owner will recover it.

The court further instructed the jury that:

Knowledge or intent with which an act is done denotes a state of mind and connotes a purpose in so acting. Knowledge or intent being a state of mind is seldom susceptible of proof by direct and positive evidence and must ordinarily be inferred from acts, conduct, statements, and circumstances.

The court further instructed the jury: A person acts intentionally, or with intent, or wilfully with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

Defendant offered no evidence as to his intent involved in this transaction, and offered no evidence that he had reason to believe or did believe that the check would be paid upon presentment for payment.

Without some evidence at the trial to justify a requested instruction, the court is correct in refusing. In this instance, the court correctly and fully instructed the jury in regard to the requisite intent, and its refusal to give the appellant's instruction as phrased was not error.

The conviction is affirmed. No costs awarded.

CROCKETT, C. J., MAUGHAN and HALL, JJ., and GEORGE E. BALLIF, District Judge, concur.

WILKINS and STEWART, JJ., having disqualified themselves, do not participate herein.