STATE of Utah, Plaintiff and Respondent,

v.

Thomas OSSANA, Defendant and Appellant.

No. 20779.

Supreme Court of Utah.

June 17, 1987.

Rehearing Denied July 2, 1987.

David L. Wilkinson and Sandra L. Sjogren, Salt Lake City, for plaintiff and respondent.

John D. O'Connell, Salt Lake City, for defendant and appellant.

HALL, Chief Justice:

Defendant Thomas Ossana was found guilty of unlawful possession of a controlled substance with intent to distribute for value in violation of Utah Code Ann. § 58-37-8 (Supp.1983) (amended 1985, 1986, & 1987). Defendant was charged by information on October 21, 1980, but did not have a preliminary hearing until February 14, 1985, and was not brought to trial until April 23, 1985. Defendant thus assails his conviction on the grounds of lack of a prompt determination of probable cause and denial of speedy trial.

This case turns on its procedural facts. It is important to note that there are two separate cases involved—the criminal action at issue in the instant case and the collateral action resolved by this Court in

*Cannon v. Keller.*[1] The chronology of events follows.

October 17, 1980: Salt Lake City police officers execute a search warrant at the home of defendant. Officers find two to four pounds of high-grade cocaine, one and one-half pounds of marijuana, and $27,500 cash.

October 21, 1980: The State charges defendant by information with unlawful possession of a controlled substance with intent to distribute for value.

October 30, 1980: Defendant moves for discovery.

November 7, 1980: Defendant's motion for discovery granted by Circuit Judge Larry Keller.

November 12, 1980: Assistant County Attorney Michael Christensen petitions the district court for an extraordinary writ setting aside the circuit court's discovery order.

November 12, 1980: District court grants an indefinite stay of all criminal proceedings pending the outcome of the prosecution's petition. The stay is obtained *ex parte* by the prosecution.

December 15, 1980: District court issues a memorandum opinion and writ of mandamus declaring the circuit court's discovery order null and void.

December 16, 1980: Circuit court orders defendant's preliminary hearing continued without date.

December 24, 1980: Defendant moves for a rehearing on the district court's order.

December 30, 1980: Defendant's motion for rehearing set for hearing on January 14, 1981.

January 1, 1981: Defendant's motion for rehearing joined by Circuit Judge Keller, who was represented by the Utah Attorney General.

January 1981: Rehearing stricken on motion of the County Attorney and again noticed for hearing by defendant.

January 26, 1981: Rehearing again stricken.

February 24, 1982: Prosecution obtains *ex parte* order remanding the criminal case to the circuit court for preliminary hearing. Order entered unsigned.

March 1, 1982: Motion by defendant for a stay of the preliminary hearing until the rehearing has been held. The district court grants a stay pending a hearing on defendant's motion for rehearing.

March 10, 1982: Hearing on the motion for rehearing. The district court reaffirms its earlier decision declaring the circuit court's discovery order null and void.

May 6, 1982: Defendant files notice of appeal with Supreme Court.

May 14, 1982: Docketing statement filed.

August 30, 1982: Defendant files brief (extensions obtained on behalf of court reporter).

February 4, 1983: Default notice mailed to Christensen.

March 8, 1983: Plaintiff granted until April 4, 1983, to file brief. Defendant stipulates to extension.

May 16, 1983: Prosecution files brief.

September 12, 1984: *Cannon v. Keller* argued before this Court.

October 25, 1984: *Cannon v. Keller* decided. This Court reverses district court's decision granting mandamus and affirms circuit court's discovery order.

January 14, 1985: Circuit court sets preliminary hearing and orders the State to comply with the original discovery order or return defendant's property by February 8, 1985.

January 28, 1985: Motion by County Attorney to vacate the November 12, 1980 stay of the criminal proceedings.

January 31, 1985: Stay of criminal proceedings lifted.

February 6, 1985: Case remitted to Salt Lake County from Supreme Court.

February 7, 1985: Defendant moves to dismiss because of lack of a prompt prelim-

1. 692 P.2d 740 (Utah 1984).

inary hearing and because of the failure of the prosecution to comply with the circuit court order of discovery or property return. Circuit court continues the preliminary hearing to February 14, 1985, and again orders prosecution to comply with the discovery order.

February 14, 1985: Preliminary hearing held over the objection of defendant. Defendant bound over for trial.

February 28, 1985: Motion by defendant to quash the information.

March 1, 1985: Defendant moves to dismiss on speedy trial grounds and because the statute of limitations, Utah Code Ann. § 76–1–302(a) (1978) (amended 1985), has run.

April 22, 1985: Defendant's motion to dismiss denied.

April 29, 1985: After trial before the court, defendant found guilty as charged.

June 17, 1985: Supreme Court grants certificate of probable cause.

Defendant's main point on appeal is that the delay of four and one-half years from his arrest until the time he was brought to trial violated his right to a speedy trial guaranteed by the sixth amendment to the United States Constitution and article I, section 12 of the Utah Constitution. That claim must be analyzed under the test set forth in *Barker v. Wingo* [2] and adopted by this Court.[3] In *Barker*, the United States Supreme Court adopted a balancing test "in which the conduct of both the prosecution and the defendant are [sic] weighed." [4] Four factors must be weighed: the length of the delay, the reason for the delay, the defendant's assertion of the right to a speedy trial, and the prejudice to the defendant resulting from the delay.[5]

The first factor to be considered is the length of the delay. There is no question that the 54–month delay between arrest and trial raises legitimate questions concerning the speedy disposition of defend-

ant's case. However, when this delay is balanced with the other factors, the delay was insufficient to unconstitutionally deny defendant his right to a speedy trial.

Both the prosecution and defendant share the blame for the delay. The most disturbing period of delay was the 13– to 14–month period following the district court decision voiding the circuit court order and the striking of defendant's motion for rehearing. There is little question that the prosecutor was remiss in failing to affirmatively pursue the case during this period. However, defendant clearly acquiesced in this delay. At the hearing on defendant's motion to quash the information, defense counsel stated:

> After the second striking of my motion for rehearing, I did not notice it up again. . . . The reason I did not notice it up . . . was because, as far as I could see, the decision of Judge Condor [sic] hurt the State very badly on a number of cases. It's the State, particularly on very serious matters, who most often uses discovery in the circuit court. . . .
>
> . . . So I assume that the State was— kind of caught itself on the horns of a dilemma. They did not want to live with Judge Keller's order, but I didn't think they could live with Judge Condor's [sic] order either even though they (quote) won the case.
>
> *If they wanted to keep striking it from the calendar and leave it in limbo, I was going to let them do that.* I was assuming they were just going to let the whole matter die; that there was no way they saw they could get out of the dilemma.

(Emphasis added.)

Furthermore, when the prosecutor did finally act to bring defendant before the court for preliminary hearing, defendant moved for a stay of the preliminary hearing pending a rehearing on the district

**2.** 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**3.** *State v. Banner,* 717 P.2d 1325, 1327–28 & n. 3 (Utah 1986); *see also State v. Knill,* 656 P.2d 1026, 1029 (Utah 1982).

**4.** 407 U.S. at 530, 92 S.Ct. at 2192 (footnote omitted).

**5.** *Id.*

court's order. Following the rehearing, at which the district court affirmed its order, defendant filed a notice of appeal. The preliminary hearing was thus delayed pending the outcome of the appeal. At no time did defendant move to dismiss the information for failure to prosecute or take any affirmative action to clear the charges against him.

In *State v. Velasquez,*[6] this Court held that when a prisoner acts to delay trial, he indicates his willingness to temporarily waive his right to a speedy trial.[7] This is true whether or not the reason for the delay is meritorious. The rationale of *Velasquez* is applicable to much of the delay in this case, including the appeal resolved by this Court in *Cannon v. Keller* and the stay of the preliminary hearing.

Furthermore, after filing his notice of appeal in *Cannon v. Keller*, defendant did not make this Court aware in any fashion of a need for an expedited appeal. Even following the filing of defendant's brief, defendant made no effort to inform this Court of the interests at issue or to move the process along. Six months after defendant filed his brief and four weeks after this Court mailed a default notice to the prosecutor, the prosecutor asked for an extension of time to file his brief. Not only did defendant not object, but he stipulated to the extension. At no time in the ten weeks it took the prosecutor to file his brief did defendant move for summary disposition or request expedition. It was only after both briefs were filed and the Court perused the case in the usual course of things that the need for expedited resolution was recognized and promptly acted upon by this Court.

We emphasize that a defendant does not have a duty to bring himself to trial. However, it is not only affirmative delay that weighs against a defendant. If on balance the facts indicate that a defendant used a delay by the prosecution for his own purposes, all other factors being equal, that delay cannot be weighed heavily against the prosecution.

The third *Barker* factor to be figured into the balancing equation is whether defendant asserted his right to a speedy trial. While *Barker* made it clear that a defendant cannot waive his right to a speedy trial by failing to demand it,[8] the factors underlying that failure must be figured into the balance.[9] At no time did defendant assert his right to a speedy trial. Defendant did move to have the information dismissed for *lack* of a speedy trial, but only after this Court had considered and resolved the appeal in *Cannon v. Keller* and only after defendant had been bound over for trial.

Defendant contends that he was unable to move for a speedy trial because he had not been bound over for trial. Under the facts extant, this contention has no merit. As noted herein, defendant himself affirmatively moved to delay his preliminary hearing and used the delays for his own purposes.

Finally and most importantly, *Barker* requires an inquiry into whether defendant was prejudiced by the delay. We find that there was no prejudice. In its consideration of prejudice in *Barker*, the Court identified three interests to be protected: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense would be impaired.[10]

Defendant was not incarcerated during the period of delay, nor has he been incarcerated during this appeal. Further, the prejudice associated with anxiety and concern is closely tied to a demand for a

---

**6.** 641 P.2d 115 (Utah 1982).

**7.** *Id.* at 116.

**8.** The *Barker* Court stated: "We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right." 407 U.S. at 528, 92 S.Ct. at 2191 (footnote omitted). To the extent that *State v. Lairby,* 699 P.2d 1187, 1193 (Utah 1984), and *State v. Sparks,* 672 P.2d

92, 94 (Utah 1983), suggest otherwise, we disavow them.

**9.** As the Court said in *Barker:* "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532, 92 S.Ct. at 2193.

**10.** 407 U.S. at 532, 92 S.Ct. at 2193.

speedy trial. If anxiety and concern were really prejudicial, defendant was free to demand an expeditious trial. As the Court said in *Barker:* "The strength of a [defendant's] efforts will be affected ... most particularly by the personal prejudice ... that he experiences. The more serious the deprivation, the more likely a defendant is to complain." [11] There is no evidence in the record that defendant's defense was impaired. The evidence of defendant's guilt was overwhelming. Defendant, however, contends that he was prejudiced by the fading memories of the prosecution's witnesses. This is not prejudicial to defendant. First of all, the few instances of fading memories concerned insignificant facts. Second, if there was prejudice to anyone by faded memories, it was to the prosecution, not to defendant.

■ There is no question that this case presents a difficult set of facts. Four and one-half years between arrest and trial is an extraordinary period of time. As in *Barker,* very little of that time can ·be attributed to a strong excuse. However, again as in *Barker,* two countervailing factors outweigh the deficiency. The first is that prejudice was minimal, as noted above. But more importantly, defendant did not want a speedy trial.[12] On balance then, we conclude that defendant was not denied a speedy trial.

Defendant's second point on appeal is that defendant's motion to quash the information should have been granted since his preliminary hearing was not held until more than four years after the information was filed. Utah Rule of Criminal Procedure 7(c) provides in pertinent part:

If the defendant does not waive a preliminary examination, the magistrate shall schedule the preliminary examination. Such examination shall be held within a reasonable time, but in any event not later than ten days if the defendant is in custody for the offense charged and not later than 30 days if he is not in custody; provided, however, that these time periods may be extended by the magistrate for good cause shown.[13]

This Court, in *State v. Poteet,*[14] addressed the application of the time limits in Rule 7(c). The Court noted that although article I, section 13 of the Utah Constitution guarantees an accused the right to a preliminary hearing, it does not specify a time in which the hearing must be held.[15] Rule 7(c) does specify a time limit, but does not provide a remedy for violation of that time limit. In *Poteet,* the Court found that in the absence of prejudice to the accused, a violation of Rule 7(c) did not warrant reversal.[16]

■ In this case, defendant has demonstrated no prejudice to himself or to his case from the lack of a prompt preliminary hearing. Neither witnesses nor evidence had disappeared, and defendant was unable to show any significant memory lapses on the part of any witnesses at trial. Nor was defendant in custody during any of the time prior to his preliminary hearing. Finally, as noted above, defendant himself, apparently for tactical reasons, caused much of the delay, both by his conscious decision not to move forward and by his own motion for a stay of the preliminary hearing when a preliminary hearing was finally scheduled by the State in March 1982.[17]

---

**11.** 407 U.S. at 531, 92 S.Ct. at 2192.

**12.** "More important than the absence of serious prejudice, is the fact that [defendant] did not want a speedy trial.... No question is raised as to the competency of ... counsel.... Instead the record strongly suggests that while [defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." *Barker,* 407 U.S. at 535, 92 S.Ct. at 2194 (footnotes omitted).

**13.** Utah Code Ann. § 77–35–7(c) (1982).

**14.** 692 P.2d 760 (Utah 1984).

**15.** *Id.* at 764; *see also State v. Kelly,* 718 P.2d 385, 393 (Utah 1986).

**16.** 692 P.2d at 765.

**17.** "A defendant can fully protect himself from unreasonable delay by moving for advancement of the preliminary hearing date and by objecting to any postponements." *Jaben v. United States,* 381 U.S. 214, 221 n. 3, 85 S.Ct. 1365, 1369 n. 3, 14 L.3d.2d 345 (1965).

Therefore, while we do not condone the State's failure to promptly provide a preliminary hearing to defendant, defendant's own conscious decision not to seek a prompt preliminary hearing and the apparent lack of prejudice to defendant or his case convince us that the State's gross violation of Rule 7(c) does not merit reversal.

Defendant's conviction is affirmed.

HOWE, J., concurs.

STEWART, Associate C.J., concurs in the result.

ZIMMERMAN, Justice (concurring):

I join the majority in its analysis of the speedy trial issue. However, the majority opinion is entirely silent regarding the dispute that delayed this case so long, a dispute that resulted from the Salt Lake County Attorney's taking a curiously inconsistent position. Because the action of the County Attorney has implications for other cases in which the speedy trial question may arise, it deserves comment.

Immediately after Mr. Ossana's arrest, the County Attorney refused to return to Ossana a large amount of cash seized during the search of the Ossana residence. The County Attorney asserted that the cash was evidence of a transaction with a confidential informant that occurred some time before the arrest. When Ossana's attorney sought particulars regarding the alleged transaction with the supposed informant, the County Attorney refused to divulge the information, despite the fact that Ossana was clearly entitled to it. The prolonged wrangling that followed, described in this Court's opinion in *Cannon v. Keller*, 692 P.2d 740 (Utah 1984), prevented speedy resolution of the criminal charges.

Following the *Cannon* decision—in which the County Attorney's position was flatly rejected as being entirely without merit—the case was remanded for further proceedings. After additional delay, and prompted by two orders from the district court, the County Attorney ultimately returned the funds to Ossana. It appears to me now, as it did at the time *Cannon* was decided, that the County Attorney came dangerously close to acting in bad faith when he claimed that the funds were evidence of some other transaction and yet refused to give any information of that transaction to the defendant and to adequately justify that refusal. In fact, given the ultimate resolution of the matter following the *Cannon* remand, the County Attorney's conduct suggests that his position was taken principally to harass Ossana by denying him the use of his money pending the prosecution of the case.

If bad faith on the part of the State were demonstrated in a given case, I would charge the resulting delay against the State, ignore any complicity in the delay on the defendant's part, and then determine the speedy trial issue. Were the delay as long as it was here, I would find a denial of the defendant's rights. The prosecutor is entrusted with a tremendous amount of discretion in deciding whom to prosecute and how the prosecution is to be conducted. This imposes upon the prosecutor a corresponding duty to exercise this power with the utmost good faith. When it is not, the courts should not hesitate calling the State to account. As stated in *State v. Brickey*, 714 P.2d 644, 647 (Utah 1986), "[T]he prosecutor's good faith is a fragile protection for the accused."

The present case, however, is not one that calls for charging the State with the delay occasioned by the fight over the funds and the consequent need for discovery. The County Attorney's position, although quite questionable, was accepted by a district judge. *See Cannon v. Keller*, 692 P.2d at 742. That appears to preclude a finding of bad faith, since the district judge had the relevant facts before him. Under such circumstances, the defendant's active complicity in the delay requires that the delay not be charged entirely against the State.

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.