STATE of Utah, Plaintiff and Respondent,

v.

Leonard G. MILLER, Defendant and Appellant.

No. 860347–CA.

Court of Appeals of Utah.

Dec. 23, 1987.

Edward K. Brass, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

David L. Wilkinson, State Atty. Gen., Sandra J. Sjogren, Asst. Atty. Gen., for plaintiff and respondent.

Before BENCH, DAVIDSON and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Defendant Leonard G. Miller appeals his felony convictions for retail theft while armed with a deadly weapon, aggravated assault, and possession of a dangerous weapon by a restricted person. He claims that he was denied his constitutional right to a speedy trial and that his conviction on the aggravated assault charge unconstitutionally subjected him to double jeopardy for the same offense. We affirm.

## FACTS

Miller, a Utah State Prison parolee, walked into a grocery store in West Valley City on December 4, 1985. He walked out with a case of beer and a carton of cigarettes for which he did not pay. An assistant store manager, David K. Bennion, followed him into the parking lot and requested a cash register receipt; Miller failed to produce anything but a crumpled piece of paper. Miller refused Bennion's request that he return to the store. Bennion then took hold of Miller's arm and began pulling him toward the store. Miller pulled a knife from a belt scabbard and said he would not go to the store, but would leave the purloined merchandise. Miller was released and left the premises. Bennion retrieved the merchandise, then went inside and called the police. Miller's license plate number, noted by witnesses to the parking lot scuffle, was given to the police. He was arrested at home that evening, identified, and booked into Salt Lake County jail, where he remained until trial on May 5, 1986. An information, charging Miller with the felonies of aggravated assault and retail theft while armed with a dangerous weapon, was filed in Fifth Circuit Court on December 6, 1985. He was bound over to Third District Court on these two felony charges after a preliminary hearing before Judge Gibson on December 17.

Earlier, on November 9, Miller was in an altercation with Ralph Robinson at a residence at 1476 West Parkway in West Valley City. Their fight led to a simple assault charge (a misdemeanor) against Miller in Fifth Circuit Court. On November 18, Miller had failed to appear in Fifth Circuit Court, West Valley Division, to answer that charge. A warrant for his arrest was issued and was outstanding at the time of his arrest on the felony charges. Miller was taken from the county jail and arraigned in circuit court on the Robinson simple assault on December 6, at which time a pretrial conference was scheduled for January 7, 1986.

On December 20, three days after being bound over on the felony charges, the misdemeanor information was filed by West Valley City, charging Miller with a simple assault on November 9 at 1476 West Parkway, but erroneously listing the victim as David K. Bennion and including reference to a police report that dealt with the shoplifting incident.

Miller was arraigned in Third District Court on the felony charges arising out of the shoplifting on January 3, 1986. He pled not guilty, and trial was scheduled for February 13, 1986.

Miller then proceeded to the scheduled misdemeanor pretrial conference before Judge Burton on January 7. His simple assault charge was plea-bargained down to disorderly conduct. He was sentenced to

twenty days in jail and credited for time served.

Prosecutors in the felony cases, having discovered Miller's parolee status, filed a new felony information on January 9 containing the added charges of possession of a weapon by a restricted person and aggravated robbery (as an alternative to the charge of retail theft while armed).

On January 31, Miller appeared before Judge Judith M. Billings in Third District Court and moved to dismiss the original aggravated assault felony charge, representing to the court that it had been disposed of by the January 7 circuit court plea-bargain and sentence for disorderly conduct, a lesser included offense arising out of the same December 4 incident. His motion was granted on February 5.

On February 13, appellant appeared before Circuit Judge Noel to answer the charges in the second felony information. Miller again moved to dismiss the aggravated assault charge. Judge Noel took this defense motion under advisement.

On February 21, respondent filed a motion for Judge Billings' reconsideration of the dismissal of charges in the first information. That motion was not heard until April 2, when she vacated the dismissal order upon learning that Miller's January 7 plea was to charges arising out of the Robinson simple assault on November 9, totally unrelated to the shoplifting incident. Its reconsideration motion resolved, the prosecution dismissed the first felony information. Judge Noel had apparently held off ruling on Miller's motion to dismiss charges in the second information until Judge Billings disposed of the reconsideration motion. Miller was bound over by Judge Noel on the second felony information on April 3, was tried and convicted by Judge Billings on May 5, and was sentenced on May 30, 1986.

## SPEEDY TRIAL

Miller first contends that his incarceration from December 4, 1985 until trial on May 5, 1986 resulted in a denial of his right to a speedy trial, guaranteed by the sixth amendment to the United States Constitution and article I, section 12 of the Utah Constitution. His claim must be analyzed under the test enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and adopted by the Utah Supreme Court in *State v. Banner*, 717 P.2d 1325, 1327–28 & n. 3 (1986). *State v. Ossana*, 739 P.2d 628, 630 (Utah 1987). *See also State v. Knill*, 656 P.2d 1026, 1029 (Utah 1982).

Under the *Barker* balancing test, we must examine the conduct of both the prosecution and the defendant and weigh the following four factors: (1) length of delay; (2) reason for delay; (3) defendant's assertion of the right to a speedy trial; and (4) prejudice to defendant from the delay. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192.

Miller was incarcerated for 152 days between arrest and trial in this action, resulting in a delay of 132 days after subtracting his twenty-day jail sentence for disorderly conduct. Although this is not an insignificant period of pretrial confinement, the delay did not result in a denial of appellant's right to a speedy trial when balanced against the other factors.[1]

Contrary to appellant's assertions, a substantial portion of the blame for the delay in this case must fall on his shoulders. Appellant's January 31 motion to dismiss was the cause of at least seven days of delay. More importantly, although the record and the parties provide no reason for the considerable delay between the filing of respondent's reconsideration motion on February 21 and the April 2 hearing and decision on it, the reconsideration motion was itself necessitated by the granting of appellant's January 31 motion to dismiss the aggravated assault charge.

We do not believe that Miller was actually misled by the misdemeanor information

---

1. Utah Code Ann. § 77–1–6(h) (1982) entitles a criminal defendant who cannot post bail to a trial within 30 days after arraignment "if the business of the court permits." As both parties recognize, equivalent language in a prior statute was held to be directory and not mandatory. *State v. Menzies*, 601 P.2d 925 (Utah 1979).

that erroneously listed Bennion as the victim of the simple assault on November 9. Miller knew, or reasonably should have known, that the misdemeanor assault offense (on which he pled guilty to the lesser included offense of disorderly conduct) arose from his battle with Robinson and not from the separate incident involving Bennion. He merely took advantage of the error and made representations to Judge Billings and to the felony prosecutor on January 31 that were simply not true, parlaying his plea-bargain on the simple assault charge into a temporary dismissal of the felony charge of aggravated assault on Bennion. Unfortunately for appellant, his ploy was discovered and rectified, but the correction process necessitated by his maneuvering required additional time. Because Miller's confusing antics reveal his willingness to temporarily waive his speedy trial right, the delay resulting from the reconsideration motion cannot be weighed heavily against the respondent. *See State v. Ossana*, 739 P.2d at 631; *State v. Banner*, 717 P.2d at 1329–30; *State v. Velasquez*, 641 P.2d 115, 116 (Utah 1982).

Moving to the third *Barker* factor, our review of the record reveals almost no effort by Miller to assert his right to a speedy trial.[2] "While *Barker* made it clear that a defendant cannot waive his right to a speedy trial by failing to demand it, the factors underlying that failure must be figured into the balance." *State v. Ossana*, 739 P.2d at 631 (citing *Barker v. Wingo*, 407 U.S. at 528, 92 S.Ct. at 2191). At the January 31 hearing, appellant did not object to the February 13 trial setting. We find no indication that Miller complained about delay to Judge Noel at his February

13 preliminary hearing on the second felony information or that he ever made any motion to dismiss either of the felony informations for failure to prosecute. He did not press either Judge Noel or Judge Billings for a prompt decision or hearing on the motions pending before them. He did not complain about his pretrial incarceration at either the April 2 hearing before Judge Billings or at his arraignment before her on April 11. At the start of trial on May 5, Miller's counsel did indicate, inaccurately, that Miller had been in jail for approximately six months, but he did not ask the court to dismiss the charges.

The last factor we must consider in applying the *Barker* balancing test is whether appellant was prejudiced by the delay. Such prejudice is to be evaluated in light of three interests the speedy trial right was designed to protect: prevention of oppressive pretrial detention; minimization of anxiety and concern of the accused; and limitation of the possibility that the defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193; *State v. Ossana*, 739 P.2d at 631.

Miller does not assert that his legal defense was harmed by the delay in getting to trial. Instead, he claims that his pretrial incarceration was oppressive and caused him significant anxiety and concern.[3] That claim is vitiated by his failure to express any such complaint during the incarceration period or to seek prompt disposition of his case.

> [T]he prejudice associated with anxiety and concern is closely tied to a demand for a speedy trial. If anxiety and concern were really prejudicial, defendant was free to demand an expeditious trial.

---

**2.** "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193.

**3.** Miller claims further prejudice because of an alleged Board of Pardons policy of not allowing credit for time served prior to trial, which would effectively add five months to his sentence. However, Board of Pardons Policy No. 4.06, adopted seven months before appellant filed his brief, specifically credits "any time that an offender was incarcerated prior to commitment unless it was as a result of abscond-

ing. . . ." Furthermore, the Utah Supreme Court recently held that, under the equal protection clause of the fourteenth amendment, credit against any sentence must be given for all presentence incarceration imposed because of a defendant's inability to post bail, *State v. Richards*, 740 P.2d 1314, 1317 (Utah 1987), which appellant asserts is the reason for his pretrial incarceration. We note further that Miller undoubtedly could have had his parole revoked due to the misdemeanor plea and would have been back in prison instead of jail if the felony arrest had not intervened.

As the Court said in *Barker*: "The strength of a [defendant's] efforts will be affected ... most particularly by the personal prejudice ... that he experiences. The more serious the deprivation, the more likely a defendant is to complain."

*State v. Ossana,* 739 P.2d at 631–32 (quoting *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192).

Balancing all of the four relevant factors, we conclude that Miller was not denied his constitutional right to a speedy trial.

## DOUBLE JEOPARDY

■ The constitutional guarantee against double jeopardy affords a criminal defendant three separate protections by prohibiting: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *State v. Dyer,* 671 P.2d 142, 146 (Utah 1983).

■ Appellant Miller seeks reversal of his conviction for aggravated assault upon David K. Bennion because it constitutes a second punishment for the "same offense." He claims that the misdemeanor assault charge, on which he pled guilty to a lesser included offense, was the same offense as the felony aggravated assault charge. This argument arises from the error in the December 20 misdemeanor information, discussed above, whereby Bennion was listed as the victim of a simple assault involving no weapon on November 9 at 1476 West Parkway when, in fact, Robinson was the actual victim.

However, even if we believed that on January 7 Miller actually thought he was pleading guilty to the offense arising out of the December 4 shoplifting incident, his belief would not transform the two unrelated criminal episodes into the "same offense" for double jeopardy purposes. The information in the case before us clearly charged a felonious assault with a dangerous weapon upon Bennion on December 4 at 1500 West 3500 South. The misdemeanor information and the felony information obviously charge two distinct criminal offenses on two different dates at two different locations, not the same offense. These two separate criminal offenses are related only insofar as they were committed by the same man.

Appellant's convictions are affirmed.

DAVIDSON and BENCH, JJ., concur.