STATE of Utah, Plaintiff and Appellee,

v.

Jerome Victor TRAFNY, Defendant and Appellant.

No. 890276.

Supreme Court of Utah.

Oct. 18, 1990.

Michael D. Esplin, Provo, for defendant and appellant.

R. Paul Van Dam, Christine F. Soltis, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

This case is on appeal from the Fourth Judicial District Court, Utah County. Defendant was convicted by a jury of rape, a

first degree felony. He claims that he was denied his state and federal constitutional right to a speedy trial and his right not to be placed twice in jeopardy.

On March 2, 1988, defendant Jerome Victor Trafny was arrested in Utah County for the rape of a sixteen-year-old girl.[1] At the time of his arrest, Trafny was on federal parole, and a parole hold was placed on him. He was arraigned on March 18, 1988, and entered a plea of not guilty. Because he requested a speedy trial, the court set the trial date on April 7, 1988.

On March 31, 1988, the State filed a motion to continue because the victim was unavailable to appear in court. Trafny agreed to the continuance upon the express representation that the trial date would be set within the time limits for a speedy trial. The date agreed upon was April 13, 1988.

On the April 13 trial date, Trafny and his counsel appeared ready to proceed; however, the State again moved for a continuance because a key witness, who had been subpoenaed, was unavailable. Trafny objected to the continuance, and after hearing the representations of counsel, the trial court denied the State's motion. Following the denial, the State moved to dismiss without prejudice, to which Trafny objected. Counsel for Trafny stated that Trafny would only agree to a dismissal with prejudice because he was ready to proceed with trial and had been incarcerated since March 2, 1988. The court granted the State's motion for a dismissal without prejudice.

Following the dismissal, federal authorities retained Trafny in custody, and he was still in custody on June 6, 1988, when the State issued an arrest warrant on the same charge that had previously been dismissed. Trafny was taken before a magistrate on the second information on July 13, 1988, at which time bail was set in the amount of $20,000. At the July 13 preliminary hearing, Trafny objected to the further prosecution, claiming that it denied him the right to a speedy trial. No additional evidence was presented at the preliminary hearing than had already been presented at the

original preliminary hearing in March 1988. Trafny was bound over to the district court for arraignment.

On July 26, 1988, prior to the arraignment, Trafny moved to dismiss the charge on the ground that his right to a speedy trial had been violated. Subsequent to oral arguments, the motion was denied, and trial was set for August 9, 1988. On August 5, 1988, Trafny requested a continuance because his trial counsel would be unavailable. The trial was continued to October 12, 1988.

On October 13, 1988, after one day of trial, Trafny moved for a mistrial because the State had failed to supply him with possibly exculpatory evidence in the form of certain lab reports concerning hair samples obtained as evidence. The trial court granted Trafny's motion for a mistrial, and the matter was reset for November 9, 1988.

On November 2, 1988, Trafny again moved to dismiss based on the denial of his right to a speedy trial and, additionally, on his being placed twice in jeopardy. He also filed a motion in limine on November 7, 1988, to suppress the testimony of a cell mate. Both motions were denied prior to trial.

The case was tried to a jury on November 9, 1988, and a verdict of guilty was rendered on November 10, 1988. On March 24, 1989, the trial court entered judgment and sentence of five years to life. Trafny moved for a new trial, which was denied. On May 4, 1989, Trafny was remanded to the custody of the Utah Department of Corrections for execution of the sentence.

Trafny presents two issues on appeal: (1) Was he denied the right to a speedy trial under the provisions of the statutes and constitutions of the United States and the state of Utah? and (2) was he placed again in jeopardy following the declaration of a mistrial?

## I. FEDERAL SPEEDY TRIAL

Trafny's first claim is that his right to a speedy trial under the sixth amendment to

---

**1.** Trafny does not challenge the sufficiency of the evidence to sustain the conviction, and

therefore, the substantive facts of the offense are not recounted.

the United States Constitution was violated.[2] The sixth amendment reads in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...."

The right to a speedy trial is different in character from the other fundamental rights guaranteed in the federal constitution. In *Barker v. Wingo*,[3] the United States Supreme Court stated:

[T]he difference between the right to speedy trial and the accused's other constitutional rights is that deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. Thus, unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself.[4]

In *Barker*, the Court articulated the proper balancing test that courts must undertake in order to evaluate whether an individual's right to a speedy trial has been violated. The Court stated:

A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.[5]

The Court further stated: "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." [6]

Under the *Barker* balancing test, we look first at the length of the delay. Trafny argues that the time should begin to run from the date he was first arrested, March 2, 1988, to the trial date, November 9, 1988.

Although the record does not indicate what occurred prior to June 6, 1988, the prosecution concedes the following facts: Trafny was first arrested on March 2, 1988, and the time first began to run from that date. Between March 2 and April 13, two trial dates were set. The first date, April 7, 1988, was continued on motion from the prosecution because the victim was unavailable consequent to serious illness requiring hospitalization. The April 13 trial date was not met because one of the prosecution's main witnesses was testifying in another trial. It was at this second trial appearance that the court dismissed the charges without prejudice.

■■■ Once the charges were dismissed without prejudice Trafny was a free man as far as the State was concerned. The fact that the federal authorities chose to hold Trafny on a parole violation arising out of the rape charge between April 13 and July 13 cannot be attributed to the State for speedy trial purposes because no State charges were pending. Between March 2 and April 13, Trafny was incarcerated by the State for 42 days.

A 42–day delay does not rise to the level of per se prejudice, nor is it presumptively prejudicial. Because length of delay is the "triggering mechanism" to the remainder of the *Barker* test, our analysis of the first time period need go no further. Likewise, under the other three parts of the test,

---

**2.** The sixth amendment right to a speedy trial was made applicable to the states through the fourteenth amendment in *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967).

**3.** 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**4.** *Id.* at 521, 92 S.Ct. at 2187.

**5.** *Id.* at 530, 92 S.Ct. at 2192.

**6.** *Id.*

Trafny was not denied the right to a speedy trial. First, unavailability of witnesses is a valid reason for the State to ask for a continuance and a dismissal without prejudice.[7] Second, there is no dispute as to Trafny's desire for a speedy trial. Third, there was no prejudice to Trafny for any of the delays because the charges were ultimately dropped.

■ On June 6, 1988, a second arrest warrant was issued by the State. Trafny first appeared before the court on July 13, and a preliminary hearing was held on July 21, at which time Trafny was bound over to stand trial. On July 26, the State filed an information charging Trafny with the crime. At the arraignment on July 29, the court set the trial date for August 9, 1988. The second time period, of course, began to run when Trafny was taken into the State's custody on July 13.

On July 26, 1988, Trafny moved to dismiss for violation of his right to a speedy trial. Also, on August 5, Trafny moved to continue the trial date because his counsel was unavailable. When a defendant's motion is pending before the court, the period of delay consequent to the filing of the motion should not be assessed against the State.[8] Only 13 days passed between Trafny's July 13 appearance before the court when he was taken into the State's custody and his filing of the July 26 motion.

Trafny's motion for a continuance was granted, and trial was reset for October 12 and 13. On October 11, Trafny's July 26 motion to dismiss was heard and denied. Between July 26 and October 11, the delays in the trial process were caused by Trafny's own motions and cannot be counted against the State.

The first trial began on October 12; however, on the second day of trial the court granted Trafny's motion for a mistrial due to the failure of the prosecution to supply the results of certain laboratory tests that may have been exculpatory in character. The record does not disclose whether the State's failure to supply the laboratory test results was an oversight or intentional. Nevertheless,

> [a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.[9]

The mistrial was granted on October 13, and from that date to October 24, 11 days are includable. On October 24, Trafny moved for discovery, thereby tolling the speedy trial period until October 28. From October 28 to November 2, another 5 days are includable. On November 2, Trafny filed an additional request for discovery, a motion to dismiss for violation of the right to speedy trial, and a motion in limine. Oral argument was heard on all motions on November 7, when the motion to dismiss was denied and the motion in limine was taken under advisement until trial. The period from November 2 through the November 9 and 10 trial is excludable because of the various pending motions.

The total number of days in State custody from July 13 through November 10 that are includable for speedy trial purposes is 28. Even if all days after the mistrial are counted, the total would only be 38 days. Neither 28 nor 38 days are delays that could be considered presumptively prejudicial. Furthermore, the delays during the second period were prompted to a great extent by defendant's own motions and repeated requests for discovery. Although Trafny consistently claimed the right to a speedy trial, his actions belie the fact. Balancing the overall factors, any delays in the trial process were not unduly burden-

---

**7.** *Id.* at 531, 92 S.Ct. at 2192 (missing witnesses serve to justify appropriate delay).

**8.** *See, e.g., United States v. Loud Hawk,* 474 U.S. 302, 314–17, 106 S.Ct. 648, 655–57, 88 L.Ed.2d 640 (1986).

**9.** *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192.

some to Trafny, especially when the record reflects that Trafny asked for a continuance of the November 9 trial date at the November 7 pretrial hearing.

Trafny was not denied his constitutional right to a speedy trial under the federal constitution.

## II. UTAH SPEEDY TRIAL

■ Trafny also claims that his right to a speedy trial was violated under the Utah Constitution.[10] In addition, Utah Code Ann. § 77–1–6(1)(f) and (h) (1982) states:

(1) In criminal prosecutions the defendant is entitled:

. . .;

(f) To a speedy public trial by an impartial jury of the county or district where the offense is alleged to have been committed;

. . .;

(h) To be admitted to bail in accordance with provisions of law, or be entitled to trial within 30 days after arraignment if unable to post bail and if the business of the court permits.

This court has consistently held that the 30–day provision within which a trial is to be held is directory, not mandatory.[11]

The standard for evaluating whether a defendant's right to a speedy trial was violated under the Utah Constitution is similar to the federal standard.[12] Indeed, we have utilized the *Barker* test [13] as a method to evaluate the totality of the circumstances under the Utah Constitution.

We look first at the length of the delays. Once again, we consider the period from March 2 to April 13 (42 days) to be different from the July 13 to November 10 (119 days) period. Standing alone, these periods might at first blush seem prejudicial, but when viewed in light of the totality of the circumstances, the delays fall within constitutional safeguards.

Second, the reasons for the delays, as previously discussed, were the unavailability of a witness [14] and Trafny's own motions or failure to request certain items of discovery.[15] Time spent in custody of federal authorities cannot be counted against the State for speedy trial purposes.

Third, the record is clear that Trafny requested a speedy trial. Nevertheless, the fourth factor, prejudice to the defendant, is insignificant in light of the fact that just prior to the November 9 trial, Trafny requested a continuance which, had it been granted, would have caused even further delay.

While each case must be considered on an individual basis, we have not adhered, and do not now adhere, strictly to the 30–day provision,[16] but rather, we look to the

---

**10.** Article I, section 12 states in pertinent part: "In criminal prosecutions the accused shall have the right ... to have a speedy public trial...."

**11.** *See, e.g., State v. Menzies,* 601 P.2d 925, 926 (Utah 1979); *State v. Hafen,* 593 P.2d 538, 541 (Utah 1979); *State v. Archuletta,* 577 P.2d 547, 549 (Utah 1978); *State v. Lozano,* 23 Utah 2d 312, 462 P.2d 710, 712 (1969); *State v. Rasmussen,* 18 Utah 2d 201, 418 P.2d 134, 134–35 (1966).

**12.** In *State v. Banner,* 717 P.2d 1325, 1328 n. 3 (Utah 1986), we held: "The speedy trial right reserved under the Utah Constitution is no greater or lesser than its federal counterpart."

**13.** *See, e.g., State v. Stilling,* 770 P.2d 137, 142 (Utah 1989); *State v. Ossana,* 739 P.2d 628, 630 (Utah 1987); *State v. Banks,* 720 P.2d 1380, 1385 (Utah 1986); *Banner,* 717 P.2d at 1327–28 & n. 3; *State v. Knill,* 656 P.2d 1026, 1029 (Utah 1982); *State v. Hafen,* 593 P.2d 538, 539–40 (Utah 1979).

**14.** The absence of necessary and vital witnesses has been deemed a valid reason for delay by the State if the witnesses would be available within a reasonable time. *State v. Mathis,* 7 Utah 2d 100, 319 P.2d 134, 136 (1957).

**15.** Delays caused by the defendant will not be counted against the State and will weigh against the defendant in considering the totality of the circumstances. *See Banks,* 720 P.2d at 1385–86 (blame on both prosecutor and defendant); *Banner,* 717 P.2d at 1330; *Knill,* 656 P.2d at 1029; *Menzies,* 601 P.2d at 926; *Hafen,* 593 P.2d at 540–41.

**16.** We have held that the constitutional guarantee of a speedy trial was not violated even when the time between arrest and trial was in excess of 30 days. *See Ossana,* 739 P.2d at 632 (4½ years between arrest and trial); *Banks,* 720 P.2d at 1385 (7–month delay); *Banner,* 717 P.2d at 1329–30 (12–month delay); *Knill,* 656 P.2d at 1029 (3½ months); *Menzies,* 601 P.2d at 926

totality of the circumstances. Considering the totality of the circumstances, Trafny was not unduly prejudiced under the Utah Constitution because of the delays in bringing to trial the case against him.

## III. DOUBLE JEOPARDY

Trafny's final claim is that because of the mistrial declared in the October 13 trial, his right not to be placed twice in jeopardy was violated when he was tried again on the same charge on November 9 and 10. The protection against double jeopardy is guaranteed in both the federal[17] and Utah state constitutions.[18]

In *State v. Miller*,[19] this court articulated the protections afforded by the constitution against double jeopardy:

> The constitutional guarantee against double jeopardy affords a criminal defendant three separate protections by prohibiting: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.[20]

■ In the instant case, Trafny's contention that the mistrial and subsequent retrial placed him in double jeopardy does not bear analysis. Generally, if a defendant seeks a mistrial, he waives any defense he might otherwise assert based upon double jeopardy, even though the prosecution or the court provoked the error.[21] However,

double jeopardy bars retrial where bad faith conduct by a judge or prosecutor is intended to provoke a mistrial so as to afford the prosecution a more favorable opportunity to convict.[22]

■ Trafny relies upon the foregoing exception to the general rule that a defendant may be retried after a mistrial. We articulated the exception in *Ambrose* when we stated:

> The State may usually retry an accused if he procures the declaration of a mistrial; however, the double jeopardy clause bars retrial where bad faith conduct by a judge or prosecutor is intended to provoke a mistrial request and thereby allow the State an additional opportunity to convict the defendant.[23]

If the failure of the prosecutor to supply Trafny with exculpatory evidence rose to the level of bad faith, then retrial of the charges would have been error.

In *State v. Jarrell*,[24] we addressed the duty of a prosecutor to disclose exculpatory evidence which is unknown and not requested. The *Jarrell* court relied upon the principle set forth in *United States v. Agurs*[25] by observing:

> *Agurs* concerned the duty of a prosecutor to disclose exculpatory evidence which is unknown and not requested by the defendant. The Court held that a prosecutor has a constitutional duty to

---

(4½ months). *But see Lozano*, 462 P.2d at 713 (dismissal where defendant was incarcerated for 218 days, 135 of which were after demand for a speedy trial).

**17.** United States Constitution amendment V states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." The fifth amendment was made applicable to the states through the fourteenth amendment in *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

**18.** Utah Constitution article I, section 12 is essentially identical to its fifth amendment counterpart with regard to double jeopardy. While reference to the federal standard for protection of the right not to be placed twice in jeopardy is instructive, we conduct our double jeopardy analysis pursuant to the Utah Constitution. *Cf. State v. Stilling*, 770 P.2d 137, 142 n. 26 (Utah

1989); *State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988).

**19.** 747 P.2d 440 (Utah App.1987).

**20.** *Id.* at 444.

**21.** *See generally State v. Jones*, 645 P.2d 656, 657 (Utah 1982); *State v. Ambrose*, 598 P.2d 354, 357 (Utah 1979).

**22.** *See, e.g., United States v. Dinitz*, 424 U.S. 600, 607–08, 96 S.Ct. 1075, 1079–80, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 484–85, 91 S.Ct. 547, 556–57, 27 L.Ed.2d 543 (1971).

**23.** 598 P.2d at 357 n. 8; *see also United States v. Dinitz*, 424 U.S. at 607, 96 S.Ct. at 1079.

**24.** 608 P.2d 218 (Utah 1980).

**25.** 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

volunteer obviously exculpatory evidence and evidence that is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." 427 U.S. at 107, 96 S.Ct. at 2399. Specifically, the Court held that due process is violated if the undisclosed evidence, had it been disclosed, would have created a reasonable doubt as to defendant's guilt.[26]

On the second day of the initial trial, October 13, 1988, the court granted Trafny's motion for a mistrial based upon the fact that the prosecution had failed to supply Trafny with lab reports that compared samples of hair, blood, and saliva taken from Trafny with samples of hair and semen taken from the clothing worn by the victim on the night of the alleged rape. The semen sample matched Trafny's blood type exactly; however, the laboratory was unable to match the pubic hair samples taken from the victim's clothing with Trafny's hair samples.

In the instant case, there is no indication that the prosecution intentionally or in bad faith withheld any of the lab reports in order to cause a mistrial, thereby improving the chances of conviction in a new trial. Trafny claims that the failure to supply the lab reports cannot be explained as a simple oversight. Nevertheless, we perceive no prejudice toward Trafny because of the prosecution's failure to supply the lab reports. Indeed, Trafny did not attempt to suppress the evidence in the inculpatory portion of the lab reports in the November trial. In addition, he stipulated to the admission of the exhibits underlying the lab reports.

Trafny has failed to demonstrate, either by evidence or by argument, how he was prejudiced by the failure of the prosecutor to disclose the exculpatory evidence before the October trial. The record does not reflect bad faith on the part of the prosecution by intentionally withholding exculpatory evidence in an effort to provoke a mistrial in order to gain some tactical advantage. Indeed, the prosecution attempted to introduce both the inculpatory and exculpatory evidence at the October trial and met with no objection when the evidence was introduced at the November trial. We conclude that the prosecution did not exercise bad faith under the facts of this case and that Trafny was not placed in double jeopardy because of the retrial.

We have duly considered Trafny's other claims and find them to be without merit.

Affirmed.

HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

---

**26.** *Jarrell,* 608 P.2d at 224; *see also State v. Worthen,* 765 P.2d 839, 850 (Utah 1988); *State v.* *Carter,* 707 P.2d 656, 662 (Utah 1985).