STATE of Utah, Plaintiff and Appellee,

v.

Edgardo MENDOZA, Defendant and Appellant.

No. 950337–CA.

Court of Appeals of Utah.

May 15, 1997.

Joan C. Watt and Janet Miller, Salt Lake City, for Defendant and Appellant.

Jan Graham and Brent A. Burnett, Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, GREENWOOD and JACKSON, JJ.

OPINION

GREENWOOD, Judge:

Defendant Edgardo Mendoza challenges, by interlocutory appeal, the trial court's order denying his motion to dismiss a charge of Assault on a Correctional Officer, a class A

misdemeanor, in violation of Utah Code Ann. § 76–5–102.6 (1995). We affirm.

## BACKGROUND

The facts in this case are undisputed. On August 7, 1994, Mendoza, a prison inmate, allegedly threw a mixture of bodily excretions at a prison guard. At a subsequent administrative hearing regarding this incident, the prison disciplinary board determined that Mendoza committed the assault and ordered him to pay a $200 fine and serve thirty days in isolation. On August 15, 1994, Mendoza was charged in the district court with one count of Assault on a Correctional Officer, based on the same incident.

Mendoza filed a motion to dismiss the charge on the grounds that the prison's disciplinary actions constituted punishment against him and that double jeopardy thereby precluded any further prosecution. The only evidence presented at the hearing on the motion to dismiss was an affidavit of Terry Bartlett, the prison's director of institutional operations. In his affidavit, Bartlett stated fines "go towards reimbursing the prison the costs of the hearing, including investigation costs when applicable.... [F]ines ... also serve to encourage proper inmate behavior."

The trial court denied Mendoza's motion to dismiss, making, among others, the following rulings:

6. Fines that are assessed following a disciplinary conviction are no more than $200.00 and go towards reimbursing the prison the costs of the hearing, including investigation costs when applicable. Additional monetary amounts may be charged to the inmate to reimburse the prison for property damage or related costs....

7. Monetary judgments and fines, as well as punitive isolation ... also serve to encourage proper inmate behavior and rehabilitate the inmate.

....

9. The administrative discipline received by Defendant ... was not "grossly disproportionate to the prison's remedial goals."

The trial court concluded that the fine and punitive isolation was not punishment for purposes of double jeopardy and that thus, prosecution in district court was not precluded. Mendoza now brings this interlocutory appeal.

## ISSUE

Mendoza's appeal raises the following issue: Does the prison's $200 fine constitute "punishment" for purposes of double jeopardy and thereby preclude prosecuting Mendoza in the district court for the same conduct?

## STANDARD OF REVIEW

At the outset, the parties dispute the appropriate standard of review for this case. Mendoza argues that this court should review the trial court's determination that the fine was not disproportionate to the State's actual costs as a conclusion of law, for correctness. The State argues that this determination is an issue of fact, which this court should review for clear error.

Certain language from *United States v. Halper,* 490 U.S. 435, 450, 109 S.Ct. 1892, 1902–03, 104 L.Ed.2d 487 (1989), suggests that determining whether a fine constitutes punishment for purposes of double jeopardy is a question of fact for the trial judge:

We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the Government may receive without crossing the line between remedy and punishment.... While the trial court's judgment in these matters often may amount to no more than an approximation, even an approximation will go far towards ensuring both that the Government is fully compensated for the costs of corruption and that, as required by the Double Jeopardy Clause, the defendant is protected from a sanction so disproportionate to the damages caused that it constitutes a second punishment.

(Citations omitted.) Notwithstanding this language, however, most cases appear to treat the ultimate determination, either implicitly or expressly, as a question of law, reviewing it for correctness. *See United States v. McClinton,* 98 F.3d 1199, 1201–02

(9th Cir.1996) (reviewing district court's determination that civil fine was not punishment for double jeopardy purposes "de novo"); *United States v. WRW Corp.*, 986 F.2d 138, 140 (6th Cir.1993) (same); *see also United States v. Morgan*, 51 F.3d 1105, 1114–15 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995) (engaging *Halper* analysis without ostensibly granting any discretion to trial court's decision or expressly stating exact standard of review); *United States v. Barnette*, 10 F.3d 1553, 1558–59 (11th Cir.1994) (same).

Even the case cited by the State to support its position, *United States v. Mayers*, 897 F.2d 1126, 1127 (11th Cir.1990) (per curiam), implies that both factual and legal issues are present. In *Mayers,* the *Halper* double jeopardy claim arose for the first time on appeal, *Halper* having been decided after the final judgment in the trial court. *See* 897 F.2d at 1127. The *Mayers* court noted that

> [u]nder *Halper,* the double jeopardy claim hinges on whether the civil penalties (1) concerned the same conduct as the criminal proceedings, and (2) rose to the level of criminal punishment because of the lack of rational relation to the Government's loss. These are factual issues which must first be resolved by the district court. We therefore affirm the convictions of the defendants but remand for a determination of the issues presented by *Halper.* ... [Whatever the outcome], the losing party could appeal the decision on the double jeopardy claim to this Court. This action reflects no judgment on the part of this Court as to the merits of the double jeopardy claim.

*Id.*

■ We conclude that the ultimate determination, based on a given set of facts, of whether a fine is overwhelmingly disproportionate as to constitute punishment for double jeopardy purposes is a question of law. This conclusion, we believe, comports with our state's standard of review jurisprudence. *See generally State v. Pena*, 869 P.2d 932,

936–39 (Utah 1994). Indeed, Utah courts consistently apply a correctness review to similar determinations. *See, e.g., State v. A House*, 886 P.2d 534, 539–42 (Utah 1994) (determining whether forfeiture was excessive under Eighth Amendment, apparently for correctness, although not specifically stating standard of review); *State v. Arbon,* 909 P.2d 1270, 1271–72 (Utah.Ct.App.) (expressly reviewing determination of whether driver's license suspension was punishment for double jeopardy purposes as question of law), *cert. denied,* 916 P.2d 909 (Utah 1996).

Of course, the underlying factual determinations, such as the amount of the State's actual expenses, are questions of fact which should be reviewed for clear error. *See, e.g., Barnette,* 10 F.3d at 1556–57; *see generally Pena,* 869 P.2d at 935–37.

Accordingly, we will review the trial court's ultimate conclusion regarding whether the fine constituted punishment for double jeopardy purposes for correctness. We review the trial court's underlying findings of fact for plain error.

## ANALYSIS

Mendoza argues that the $200 fine imposed against him constituted "punishment" for purposes of double jeopardy and that, therefore, the State may not now bring separate, additional criminal charges against him.[1] Alternatively, Mendoza argues that this court should remand this case and require the State to provide a more detailed accounting of its expenses related to the prison hearing.

The Double Jeopardy Clause prohibits, among other things, "multiple punishments for the same offense." *United States v. Halper,* 490 U.S. 435, 441, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). In the instant case, both sides agree that the analysis set forth by the United States Supreme Court in *Halper* applies in determining whether the fine is punishment.[2] *Cf. Monson v. Carver*, 928

---

1. On appeal, Mendoza does not claim that the isolation imposed against him constituted "punishment" which would bar subsequent charges against him.

2. Mendoza also relies on cases which discuss the term "punishment" in other, somewhat related contexts. *See, e.g., Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 769, 114 S.Ct. 1937, 1941, 128 L.Ed.2d 767 (1994) (analyzing "wheth-

P.2d 1017, 1026–27 (Utah 1996) (applying *Halper* analysis to prison Board's restitution order). In *Halper*, the Court considered whether double jeopardy barred a civil penalty imposed after a criminal prosecution.[3] 490 U.S. at 441–42, 109 S.Ct. at 1898. In *Halper*, the defendant filed sixty-five separate false Medicare claims, receiving a total overpayment of $585. Pursuant to his criminal conviction, the defendant was sentenced to two years in prison and fined $5000. Subsequently, the State sought to impose a statutory "civil" penalty of $2000 per false claim, subjecting the defendant to a total "civil" fine of $130,000. Estimating the Government's actual expenses at $16,000, the district court determined that the proposed fine was punishment for double jeopardy purposes because, in its application, it "was 'entirely unrelated' to the actual damages suffered and the expenses incurred by the Government." *Id.* at 439, 109 S.Ct. at 1896. Therefore, the district court found that double jeopardy barred imposition of the fine. *See id.*

In reviewing the district court's decision, the United States Supreme Court noted that the Government is generally "entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liqui-

dated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purposes of double jeopardy analysis." *Id.* at 446, 109 S.Ct. at 1900. Nevertheless, the Court determined that "a civil sanction, in application, may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." *Id.* at 443, 109 S.Ct. at 1899. Under the facts of *Halper*, based on the district court's estimated figures of the Government's expenses, the Supreme Court agreed that the fine would constitute punishment for double jeopardy purposes. *See id.* at 452, 109 S.Ct. at 1903–04. However, the Court remanded the case, permitting the Government to rebut the district court's estimate by presenting an accounting of its actual costs arising from the defendant's fraud. *See id.* at 452, 109 S.Ct. at 1904.

■ Importantly, the *Halper* Court carefully emphasized its intent to create a "rule for the rare case" and stressed that because calculating the State's damages is an unavoidably imprecise endeavor, "affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice." *Id.* at 449, 109 S.Ct. at 1902. It is thus clear that determining

er a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense."); *Austin v. United States*, 509 U.S. 602, 604, 113 S.Ct. 2801, 2803, 125 L.Ed.2d 488 (1993) (analyzing "whether the Excessive Fines Clause of the Eighth Amendment applies to forfeitures of property."); *State v. A House*, 886 P.2d 534, 539 (Utah 1994) (analyzing whether "a forfeiture ... would violate the Eighth Amendment prohibition against excessive fines."); *State v. Arbon*, 909 P.2d 1270, 1271 (Utah.Ct.App.) (analyzing "whether, under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, an administrative driver's license suspension after a DUI arrest is 'punishment' that precludes a second punishment in a criminal proceeding."), *cert. denied*, 916 P.2d 909 (Utah 1996). As the State correctly notes, however, Mendoza's reliance on these cases, which do not deal specifically with whether fines are punishment for purposes of double jeopardy, is misplaced. In *United States v. Ursery*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), the United States Supreme Court decried applying analyses addressing the

meaning of "punishment" in different, unrelated contexts interchangeably. *See id.* at —— ——, 116 S.Ct. at 2143–47. As noted by the Ninth Circuit Court of Appeals:

In *Ursery* the Court took pains to point out that we cannot mix and match bits and pieces of the three cases. It said that *Halper* was a fixed-penalty case and its "narrow focus" was limited to that kind of situation. *Austin*, it said, was an excessive fines Eighth Amendment case whose "categorical approach" was wholly distinct from the *Halper* approach. And *Kurth Ranch* was a tax case for which the analysis was, again, quite distinct from that of *Halper*. Thus, to conflate the analyses contained in these three disparate cases is to misread them.

*United States v. McClinton*, 98 F.3d 1199, 1202 (9th Cir.1996).

3. The parties also agree that although in *Halper* the criminal action preceded the civil, the order of the proceedings is irrelevant; if a civil sanction constitutes punishment under double jeopardy, then a subsequent prosecution for the same conduct is barred. *See, e.g., United States v. Hudson*, 14 F.3d 536, 541 (10th Cir.1994).

whether a civil penalty constitutes punishment for double jeopardy purposes must rest on an "overwhelming" or " 'tremendous disparity' between the Government's actual damages and the civil penalty." *Id.* at 452, 109 S.Ct. at 1903; *see also United States v. Barnette,* 10 F.3d 1553, 1559 (11th Cir.1994) (noting that in *Halper,* ratio between recovery sought and Government's direct loss was about 222 to 1; ratio between recovery sought and Government's total estimated costs just over 8 to 1).

The parties in this case contest an issue raised by *Halper* which seems pervasive in the case law: Mendoza argues that if any part of the fine is punitive, then it is punishment for purposes of double jeopardy; the State, on the other hand, argues that the fine must be totally punitive to constitute punishment; that is, if any portion of the fine is remedial, it is not punishment, no matter how large the punitive aspects of the fine. Thus, both sides advocate an all-or-nothing approach to determining when a fine is punishment. *Cf. State v. Davis,* 903 P.2d 940, 947 (Utah.Ct.App.1995), *cert. granted,* 916 P.2d 909 (Utah 1996). The uncertainty on this issue has been created by two apparently inconsistent sentences in *Halper* itself; the first sentence supports Mendoza's position while the very next sentence supports the State's:

> From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.... We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1902 (citation omitted).

In the recent case of *United States v. Ursery,* — U.S. —, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), the United States Supreme Court dealt squarely with this seeming inconsistency. *Id.* at — – — n. 2, 116 S.Ct. at 2145–46 n. 2. The *Ursery* Court dismissed the first sentence as dictum, noting that a rule rendering sanctions with *any* punitive attributes "punishment" for double jeopardy purposes would make almost any sanction punishment. *See id.* ("[I]t is hard to imagine a sanction that has no punitive aspect whatsoever."). On the other hand, the *Ursery* Court characterized the second sentence as merely referring to *Halper*'s "rule requiring an 'accounting of the Government's damages and costs.'" *Id.* (quoting *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902).

■ Thus, neither Mendoza's nor the State's extreme, all-or-nothing interpretations of *Halper* is accurate; *Halper* establishes neither a rigid rule that a sanction must have absolutely no punitive objective to be remedial nor a rigid rule that a sanction with any remedial objective whatsoever is not punishment. Instead, *Halper* requires a "case-by-case balancing test ... in which a court must compare the harm suffered by the Government against the size of the penalty imposed." *Ursery,* — U.S. at —, 116 S.Ct. at 2145. Accordingly, the trial court's finding in this case that fines in part serve the deterrent purpose of "encourag[ing] proper inmate behavior" is not dispositive of whether the fine is "punishment" for double jeopardy purposes.

■ Furthermore, there must be a threshold indication that the fine is a punishment before the State is required to account for its expenses. *See Halper,* 490 U.S. at 449–50, 109 S.Ct. at 1902 (stating where fine "appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment."). As a threshold matter, we fail to see how the $200 fine imposed in this case could be overwhelmingly disproportionate to or totally divorced from the prison's costs arising from Mendoza's conduct. Common sense dictates that even a relatively short administrative hearing would cost the prison—in terms of salaries for persons involved, if nothing else—more than a mere de minimis amount.

Indeed, Mendoza's argument centers not on the disproportionate nature of the fine as it relates to the prison's costs, but rather on his inability to pay the fine based on his earning potential. However, as the *Halper* Court noted,

> [W]hether a sanction constitutes punishment [is not] determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment. Rather, we hold merely that in determining whether a particular civil sanction constitutes criminal punishment, *it is the purpose actually served by the sanction in question . . .* that must be evaluated.

*Id.* at 447 n. 7, 109 S.Ct. at 1901 n. 7 (emphasis added) (citation omitted). Thus, Mendoza's arguments concerning his particular situation are irrelevant to determining whether the fine is punishment.

Under the circumstances of this case, where the fine imposed is, on its face, clearly not so disproportionate to its remedial goals as to constitute punishment for double jeopardy purposes, a defendant cannot meet his or her burden of making a threshold showing of disproportionality. Accordingly, the State need not provide a more detailed accounting of its costs in this case because Mendoza's argument fails at the outset.

## CONCLUSION

Because a $200 fine is not overwhelmingly disproportionate to the State's remedial goals arising from Mendoza's misconduct, it was not punishment for double jeopardy purposes. We therefore affirm the trial court's denial of Mendoza's motion to dismiss.

WILKINS, Associate P.J., and JACKSON, J., concur.