2010 UT App 120

**STATE of Utah, Plaintiff and Appellee,**

v.

**Harold Earl BUSHMAN, Defendant and Appellant.**

**No. 20080979–CA.**

Court of Appeals of Utah.

May 6, 2010.

issue.

Margaret P. Lindsay and Douglas J. Thompson, Spanish Fork, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeanne B. Inouye, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges ORME, THORNE, and BENCH.[1]

## OPINION

THORNE, Judge:

¶ 1 Harold Earl Bushman appeals from his convictions on one count of securities fraud, a third degree felony, *see* Utah Code Ann. §§ 61–1–1,–21 (2006 & Supp.2009), and six counts of attempted securities fraud, each a class A misdemeanor, *see id.;* Utah Code Ann. §§ 76–4–101 to–102 (2008). Bushman entered a conditional guilty plea to these counts, *see generally State v. Sery,* 758 P.2d 935, 939 (Utah Ct.App.1988), preserving his right to appeal the district court's denial of his motion to dismiss all charges against him on double jeopardy grounds. We affirm.

## BACKGROUND

¶ 2 On September 10, 2007, the State charged Bushman with twelve criminal counts arising from a series of financial

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment pursuant to Utah Code section 78A–3–103(2) (2008) and rule 11–201(6) of the Supreme Court Rules of Professional Practice.

transactions in which he had been involved. On July 30, 2008, Bushman filed a motion to dismiss, arguing that the criminal prosecution against him violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, *see* U.S. Const. amend. V. Bushman's motion argued that he had already been punished for the acts alleged in the information when he entered into a Stipulation and Consent Order (the Consent Order) with the Utah Division of Securities (the Division) to resolve an investigation conducted by the Division regarding those same acts.

¶ 3 The Consent Order, entered July 3, 2007, contained extensive investigative findings cataloguing Bushman's financial activities. The Consent Order concluded that Bushman's actions constituted willful violations of the Utah Uniform Securities Act (the Act), *see* Utah Code Ann. §§ 61–1–1 to–25 (2006 & Supp.2009), and required Bushman to cease and desist from any further violations of the Act. Finally, the Consent Order required Bushman to pay a fine. The Consent Order also stated that it did not protect Bushman from potential civil liability to third parties nor did it "affect any criminal cause of action that a prosecutor might bring."

¶ 4 The fine imposed by the Consent Order was structured to encourage Bushman to promptly compensate his victims for their losses and to obey the Division's cease and desist order. The Consent Order stated,

> Harold Earl Bushman [shall] pay a fine of nineteen thousand three hundred dollars ($19,300) to the Division by Monday, October 1, 2007, reduced dollar for dollar for any money paid to the victims by July 15, 2007. The total owed to the victims is $14,300. If Bushman pays the victims in full by July 15, 2007, the Division will waive half of the remaining fine of $5,000, leaving $2,500 due by October 1, 2007. If at any time the Division discovers that Bushman acted in violation of Utah securities laws, the waived portion of the fine would be due to the Division within one month of the date on which the Division gives Bushman written notice. If Bushman fails to pay the victims in full by July 15, 2007, the entire amount of the fine

> (minus any amounts actually paid to the victims) will be due to the Division by October 1, 2007.

Bushman repaid his victims in full within the time frame contemplated in the Consent Order and also timely paid the remaining $2500 of the fine to the Division.

¶ 5 Bushman's motion to dismiss the criminal charges against him argued that the Consent Order constituted a criminal punishment for his violations of the Act and that the subsequent criminal prosecution was therefore barred as placing him in double jeopardy. The district court denied Bushman's motion, ruling that the Consent Order imposed an administrative sanction rather than a punitive one and that Bushman had therefore not been placed in criminal jeopardy by the Consent Order. Bushman subsequently entered a conditional plea of guilty to reduced charges and now appeals the district court's ruling on his motion to dismiss.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 6 Bushman's sole argument on appeal is that the district court erred in denying his motion to dismiss on double jeopardy grounds. " 'A trial court's decision to grant or deny a motion to dismiss presents a question of law, which we review for correctness.' " *State v. Bernert*, 2004 UT App 321, ¶ 6, 100 P.3d 221 (quoting *State v. Horrocks*, 2001 UT App 4, ¶ 10, 17 P.3d 1145).

## ANALYSIS

■ ¶ 7 Bushman's appeal presents the issue of whether an administrative fine under the Act, such as that imposed in the Consent Order, triggers the Double Jeopardy Clause so as to preclude future criminal prosecution for the same acts giving rise to the administrative action. We agree with the district court that such a fine does not constitute prior criminal punishment such as to implicate double jeopardy and, accordingly, we affirm Bushman's convictions.

■ ¶ 8 The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In *Hudson v. United States*, 522 U.S. 93,

118 S.Ct. 488, 139 L.Ed.2d 450 (1997), the Supreme Court stated that it has "long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment." *Id.* at 98–99, 118 S.Ct. 488 (internal quotation marks omitted). Rather, "[t]he Clause protects only against the imposition of multiple *criminal* punishments for the same offense, and then only when such occurs in successive proceedings." *Id.* Thus, "[t]he constitutional guarantee against double jeopardy affords a criminal defendant three separate protections by prohibiting: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple [criminal] punishments for the same offense." *State v. Trafny,* 799 P.2d 704, 709 (Utah 1990).

¶ 9 Bushman argues that the Consent Order constitutes criminal punishment such that any subsequent criminal conviction and penalty would present "multiple punishments for the same offense," *see id.* *Hudson,* the Supreme Court's most recent decision on the subject, focused on the double jeopardy implications of administrative sanctions and outlined a two-step test for determining "[w]hether a particular [prior] punishment is criminal or civil." 522 U.S. at 99, 118 S.Ct. 488. First, a court must "ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'" *Id.* (quoting *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Then, "[e]ven in those cases where the legislature has indicated an intention to establish a civil penalty," *id.,* a court must also examine "whether the statutory scheme was so punitive either in purpose or effect as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty," *id.* (alteration in original) (citation and internal quotation marks omitted).

## I. Legislative Intent

¶ 10 The first prong of the *Hudson* test requires us to determine whether the legisla-

ture intended administrative sanctions under the Act to be criminal or civil in nature. *Hudson* held that certain sanctions—fines and occupational debarment—imposed by federal banking regulators pursuant to federal statutes were intended to be civil sanctions. *See id.* at 103, 118 S.Ct. 488. The Court reasoned that "[w]hile the provision authorizing debarment contains no language explicitly denominating the sanction as civil," *see id.,* it is "significant that the authority to issue debarment orders is conferred upon the appropriate Federal banking agenc[ies]," *see id.* (alteration in original) (internal quotation marks omitted). The Court stated, "That such authority was conferred upon administrative agencies is prima facie evidence that Congress intended to provide for a civil sanction." *Id.*[2]

¶ 11 As with the debarment sanction in *Hudson,* the fine contained in the Consent Order was imposed pursuant to the Act's conferral of authority upon the Division, an administrative agency. Accordingly, such fines and other sanctions imposed by the Division under the Act are presumptively civil in purpose and intent. *See id.* Bushman's only real argument for criminal legislative intent is the fact that the Act authorizes both administrative and criminal sanctions. *See* Utah Code Ann. § 61–1–20 (Supp.2009) (authorizing agency enforcement of securities regulations); *id.* § 61–1–21 (authorizing criminal enforcement of securities regulations). However, the fact that the administrative and criminal sanctions are authorized by two separate sections of the Act suggests to us that the administrative sanctions are *not* intended to be criminal in nature. *See generally State v. Kirby,* 2003–NMCA–074, ¶¶ 25–26, 133 N.M. 782, 70 P.3d 772 ("Of the fifty-seven sections in [New Mexico's Securities] Act, only one section specifies criminal conduct.... We determine that, as opposed to [the section] that provides for criminal penalties, the legislative purpose in enacting the civil penalty was that the penalty constitute an integral part of an overall remedial

---

2. The *Hudson* court limited this line of reasoning to the debarment order because the fines at issue were expressly labeled as civil in the enabling statutes. *See Hudson v. United States,* 522 U.S. 93, 103, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

regulatory and administrative scheme to protect the public.").

¶ 12 Bushman has failed to overcome the presumption that the legislature intended the Act's administrative sanctions to be civil in nature when it authorized the Division, an agency, to administer them. *See generally Hudson,* 522 U.S. at 103, 118 S.Ct. 488. We therefore hold that the legislature intended that administrative sanctions under the Act, such as those imposed by the Consent Order, be deemed civil in nature.

## II. Purpose or Effect

¶ 13 Having determined that the legislature intended administrative sanctions under the Act to be civil, we next turn to the question of "whether the statutory scheme was so punitive either in purpose or effect as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (alteration in original) (citation and internal quotation marks omitted). In making this determination, the *Hudson* Court described the factors enumerated in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), as "useful guideposts." *See Hudson,* 522 U.S. at 99, 118 S.Ct. 488.

■ ¶ 14 The *Kennedy* factors include (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Id.* at 99–100, 118 S.Ct. 488 (alteration in original) (quoting *Kennedy,* 372 U.S. at 168–69), 83 S.Ct. 554. "[T]hese factors must be considered in relation to the statute on its face," *id.* at 100, 118 S.Ct. 488 (internal quotation marks omitted), and "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *id.* (internal quotation marks omitted).

¶ 15 Addressing the seven *Kennedy* factors in order, we first conclude that the Act does not allow the administrative imposition of an affirmative disability or restraint. The sanctions that the Division can impose under the Act—cease and desist orders, monetary fines, and bars against association with licensees under the Act, *see* Utah Code Ann. § 61–1–20(1)—do not constitute affirmative disabilities or restraints for purposes of *Kennedy. See Hudson,* 522 U.S. at 104, 118 S.Ct. 488 (providing that a monetary fine coupled with an indefinite ban on working in the banking industry did not constitute an "affirmative disability or restraint" because the sanctions did not "approach[ ] the infamous punishment of imprisonment" (internal quotation marks omitted)). We also note that civil penalties under the Act do "not carry the stigma of a criminal conviction." *See State v. Kirby,* 2003–NMCA–074, ¶ 30, 133 N.M. 782, 70 P.3d 772.

¶ 16 Second, neither monetary fines nor the other administrative sanctions that may be imposed under the Act have historically been regarded as punishment. *See Hudson,* 522 U.S. at 104, 118 S.Ct. 488 ("[N]either money penalties nor debarment has historically been viewed as punishment."); *United States v. Ward,* 448 U.S. 242, 256, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) (Blackmun, J., concurring) ("[M]onetary assessments are traditionally a form of civil remedy.").

¶ 17 Third, administrative sanctions under the Act do not require a finding of scienter or other mental state. Utah Code section 61–1–20 allows for the imposition of administrative sanctions "[w]henever it appears to the director [of the Division] that a person has engaged, is engaging, or is about to engage in an act or practice constituting a violation of this chapter or a rule or order under this chapter," without regard to the violator's mental state. *See* Utah Code Ann. § 61–1–20. By contrast, Utah Code section 61–1–21 allows for criminal penalties for securities violations only for actions that are willful or knowing. *See id.* § 61–1–21.

¶ 18 Fourth, we determine that the Act's administrative sanctions—fines, in particular—do incidentally promote retribution and deterrence, both of which are traditional aims of punishment. However, such sanctions are "plainly part of the [Division's] arsenal for regulation of persons dealing in the sale of securities to the public, and speak[ ] as much, if not more, to that regulatory challenge than to a sole need to punish." *Kirby*, 2003–NMCA–074, ¶ 34. As such, we determine that "while the civil penalty may by its nature have effects of deterrence and punishment, those effects are incidental to and do not override the Act's and the civil penalty's primarily remedial purpose." *Id.*

¶ 19 Fifth, the actions for which the Act imposes administrative sanctions—violations of Utah securities laws—do not constitute criminal behavior under the Act unless undertaken with the appropriate mental state. *See* Utah Code Ann. § 61–1–21 (imposing criminal penalties only for willful or knowing acts). Thus, only *some* of the "behavior to which [the Division's civil authority] applies is already a crime" under the Act, and we do not deem this factor to cut in favor of a criminal purpose or effect. *See Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *But see Kirby*, 2003–NMCA–074, ¶ 35 (holding fifth *Kennedy* factor satisfied, despite differing scienter requirements, where "it is clear that the conduct upon which the civil penalty was based also formed the basis of Defendant's indictment").

¶ 20 Sixth, we determine that there are alternative, nonpunitive purposes to which the Act's administrative sanctions may be rationally connected. Certainly, the structured fine contained in the Consent Order, *see supra* ¶ 4, was intended to encourage Bushman's prompt restitution of his victims, a purpose that is clearly nonpunitive. Although a small portion of the overall fine did not go towards restitution,[3] securities regulations such as the Act also "regulate a lawful

and important financial industry so that investors are not deceived or swindled through acts and practices our Legislature believes to be wrongful and harmful to society." *State v. Kirby*, 2003–NMCA–074, ¶ 36, 133 N.M. 782, 70 P.3d 772; *see also Securities & Exch. Comm'n v. Palmisano*, 135 F.3d 860, 866 (2d Cir.1998) ("[T]he deterrence of securities fraud serves other important nonpunitive goals, such as encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry."). Additionally, fines imposed by the Division go into a fund for investor education and training, further supporting the nonpunitive nature of such fines. *See* Utah Code Ann. § 61–1–18.7 (Supp. 2009); *cf. Kirby*, 2003–NMCA–074, ¶ 36 ("The Legislature has added substance to the remedial purposes of the Act by earmarking the civil penalty funds for public education and training on securities matters."). For these reasons, we determine that the Act's administrative sanctions may be rationally connected to purposes other than punishment.

¶ 21 Finally, the administrative sanctions do not appear excessive in relation to the alternative purposes we have identified. As stated by the New Mexico Court of Appeals in discussing that state's version of the Act,

> The Securities Act regulates lawful and often complex transactions in which New Mexico citizens engage for their financial security. Fraudulent practices in securities transactions required the United States Congress as well as states to pass comprehensive regulatory and administrative remedial legislation. The Securities Act's primary purpose is remedial, heavily oriented toward assuring that members of the public are not swindled through deceptive practices. The civil penalty is attached to an important part of the remedial aspect of the Securities Act. In any measurement, it is not a sanction that is out of proportion or excessive when consid-

---

3. Bushman, citing *State v. Mendoza*, 938 P.2d 303 (Utah Ct.App.1997), argues that the portion of the fine not going toward restitution must be justified by some nonpunitive reason such as covering the cost of the administrative investigation. However, we no longer view *Mendoza* as controlling authority in light of its reliance on the double jeopardy analysis contained in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), which was substantially overruled by *Hudson*. *See Hudson*, 522 U.S. at 96, 118 S.Ct. 488.

ering the obvious legislative view that an essential, if not the most effective, way to prevent and remedy deceptive practices is through a comprehensive regulatory and administrative legislative scheme. *Kirby*, 2003–NMCA–074, ¶ 37. We agree and determine that Utah's Act is similarly not excessive in relation to its beneficial and remedial purpose.[4]

¶ 22 In sum, the only *Kennedy* factor that could minimally suggest that administrative sanctions under the Act should be deemed criminal punishment is the fact that, in some cases, civil sanctions could be imposed for behavior that also constitutes a crime under the Act. *See supra* ¶ 19. However, this one factor alone is not enough to override the legislature's intent to make the Act's administrative sanctions civil in nature. *See Hudson v. United States*, 522 U.S. 93, 105, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) ("[T]he conduct for which OCC sanctions are imposed may also be criminal (and in this case formed the basis for petitioners' indictments). This fact is insufficient to render the money penalties and debarment sanctions criminally punitive, particularly in the double jeopardy context." (citations omitted)); *see also United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (rejecting "same-conduct" test for double jeopardy purposes). Thus, we hold that administrative sanctions for violations of the Act are civil in nature and that the Double Jeopardy Clause does not preclude subsequent criminal prosecutions under the Act arising from the same underlying facts.

¶ 23 In light of our holding, the district court's order denying Bushman's motion to dismiss is correct. The Consent Order does not constitute a criminal punishment and therefore does not implicate the Double Jeopardy Clause. Accordingly, the State was not barred from seeking and obtaining subsequent criminal convictions against Bushman for his violations of the Act.

## CONCLUSION

¶ 24 We conclude that Bushman's criminal convictions are not barred by double jeopardy because the fine imposed by the Consent Order is a civil penalty and not criminal punishment for purposes of the Double Jeopardy Clause. Accordingly, the district court properly denied Bushman's motion to dismiss, and we affirm Bushman's convictions.

¶ 25 I CONCUR: RUSSELL W. BENCH, Senior Judge.

ORME, Judge (concurring in the result):

¶ 26 I concur in this court's judgment affirming the district court's denial of Bushman's motion to dismiss all charges against him on double jeopardy grounds. But I do not see any need to discuss at length the intricacies of double jeopardy jurisprudence. In my view, Bushman waived any claim he might otherwise have under the Double Jeopardy Clause when he voluntarily entered into the Consent Order and specifically agreed that the Consent Order was no bar to "any criminal cause of action that a prosecutor might bring."

¶ 27 Without such a provision, Bushman might at least have a good due process argument that he should be relieved of his obligations under the Consent Order, as most citizens would assume that by entering into such an agreement with an enforcement arm of the State, they were buying comprehensive peace with the State. But with such a provision in place, Bushman did not proceed under any such misapprehension and, on the contrary, expressly recognized the possibility that a criminal prosecution might be forthcoming and that the Consent Order had no effect on the validity of any such prosecution.

---

4. We note that the fines that the Division could impose and judicially enforce were limited to $500 for each violation of the Act at the time of the entry of the Consent Order, *see* Utah Code Ann. § 61–1–20(2)(b)(vii) (2006), and are now limited to $10,000 per violation, *see id.* § 61–1–20(2)(b)(viii) (Supp.2009). We express no opinion as to whether a fine that is grossly disproportionate to the gravity of the underlying securities violation might give rise to some sort of as-applied double jeopardy challenge in the appropriate case; this case, however, does not present such circumstances.