2010 UT App 388

**STATE of Utah, Plaintiff and Appellee,**

v.

**Daryl OTTERSON, Defendant and Appellant.**

No. 20090244–CA.

Court of Appeals of Utah.

Dec. 30, 2010.

Dana M. Facemyer, Provo, for Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee.

Before Judges ORME, ROTH, and CHRISTIANSEN.

## MEMORANDUM DECISION

ROTH, Judge:

¶1 Daryl Otterson appeals his convictions for rape of a child, sodomy of a child, object rape of a child, and sexual abuse of a child on the grounds that the trial court (1) failed to grant his motion to dismiss after the State neglected to comply with his request for a bill of particulars; (2) erroneously denied him access to the complaining witness's counseling records; and (3) improperly admitted evidence of prior bad acts without the prosecution having given notice as required by rule 404(b) of the Utah Rules of Evidence.[1] We affirm.

¶2 Otterson's first argument on appeal is that the trial court erred when it denied his motion to dismiss based on his assertion that the State failed to comply with his request for a bill of particulars that included specific dates on which the offenses occurred. *See generally* Utah Const. art. I, § 7 (due process clause); *id.* art. I, § 12 (affording a defendant the right "to demand the nature and cause of the accusation against him"); Utah Code Ann. § 77–14–1 (2008) (implementing the constitutional guarantees by requiring a prosecutor, upon the written demand of the defendant, to "specify in writing as particularly as is known to him the place, date and time of the commission of the offenses charged"); Utah R.Crim. P. 4(e) (permitting a defendant to request a bill of particulars where the information fails to set out the nature of the charged offense); *McNair v. Hayward,* 666 P.2d 321, 326 (Utah 1983) (interpreting Utah's due process clause to entitle a defendant to "sufficiently precise notification of the date of the alleged crime [so] that he can prepare his defense"). A challenge to the denial of a motion to dismiss raises a question of law that we review for correctness. *See State v. Bushman,* 2010 UT App 120, ¶6, 231 P.3d 833. "[T]he question of the adequacy of the notice given [to the] defendant is [also] one of law." *State v. Wilcox,* 808 P.2d 1028, 1031 (Utah 1991).

¶3 In 2003, Otterson's adult daughter (Daughter) reported that Otterson had sexually abused her between 1988 and 1998. Otterson was charged by information with five offenses that occurred between 1990, when Daughter was nine, and 1993, when she was twelve. Otterson filed a motion for a bill of particulars that included a written demand for a more definite statement of the dates on which the alleged offenses occurred. The State responded, narrowing the dates for each charge to a window of four to ten months. Because Otterson deemed this response inadequate, he moved to dismiss the charges. The trial court denied the motion.

1. These rulings were issued by three different judges. Judge Anthony W. Schofield denied the motion to dismiss, though Judge Lynn W. Davis signed the final order, which included findings of fact and conclusions of law. Judge Davis conducted an in camera review of the complaining witness's medical records and entered the order denying the defense further access. Judge Claudia Laycock made the rulings regarding evidence presented pursuant to rule 404(b) of the Utah Rules of Evidence.

¶ 4 On appeal, Otterson does not contend that the State failed to provide him with the most definite information it had. Rather, he complains that the State failed to seek more specific dates from Daughter. However, Otterson does not provide any support for his claim that more detailed information could have been ascertained. *See generally State v. Robbins*, 709 P.2d 771, 773 (Utah 1985) (recognizing that children are often unable to reliably pinpoint the date an event in the past took place). Nor does he contend that the bill of particulars was constitutionally deficient. *See Wilcox*, 808 P.2d at 1032 (stating that even when the state responds to the defendant's request with the best information it has, the court must determine whether the notice was constitutionally sufficient); *State v. Fulton*, 742 P.2d 1208, 1214 n. 7 (Utah 1987) (observing that a prosecutor's full disclosure of "the date of the offense as particularly as is known to him" may still be constitutionally deficient (internal quotation marks omitted)). Even if we were to construe the bill of particulars as deficient, however, we cannot conclude that the trial court improperly denied the motion to dismiss because Otterson failed to identify how the lack of specificity in date harmed his defense. *See Wilcox*, 808 P.2d at 1032 (stating that notice is constitutionally inadequate if the lack of specificity compromises the defense or makes the defendant vulnerable to multiple prosecutions for the same offense); [2] *see also id.* at 1033 (as a basis for affirming the trial court's denial of a motion to dismiss that was premised on the defendant's claim that he was deprived of an alibi defense by the vagueness of the time frames in the charges, the supreme court noted that the defendant had failed to show that such a defense was a realistic possibility); *cf. Robbins*, 709 P.2d at 773 (affirming a conviction where the defendant failed to demonstrate that the trial court's denial of his request for a bill of particulars prejudiced his defense). Thus, we affirm the trial court's denial of the motion to dismiss.

¶ 5 Otterson next argues that the trial court improperly denied him access to Daughter's counseling records. Rule 506 of the Utah Rules of Evidence "cloaks in privilege confidential communications between a patient and her therapist in matters regarding treatment." *State v. Blake*, 2002 UT 113, ¶ 18, 63 P.3d 56; *see* Utah R. Evid. 506(b). The rule provides an exception where the otherwise privileged communication "is 'relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which that condition is an element of any claim or defense.' " *Blake*, 2002 UT 113, ¶ 18, 63 P.3d 56 (quoting Utah R. Evid. 506(d)(1)). In recognition of the importance of the privacy interests that the privilege protects, however, if an interested party resists disclosure, the defendant must petition for an in camera review in which the trial court will review the records to determine if they actually contain material that is relevant and ought to be disclosed.[3] *See State v. Cardall*, 1999 UT 51, ¶¶ 31–32, 982 P.2d 79. The trial court may conduct such a review, however, only if the defendant shows "with reasonable certainty that exculpatory evidence exists which would be favorable to [the] defense." *Blake*, 2002 UT 113, ¶ 19, 63 P.3d 56 (alteration in original) (internal quotation marks omitted). In this case, the trial court reviewed Daughter's counseling records in camera but concluded that they contained no exculpatory evidence. Otterson now contends that the trial court misunder-

2. None of Otterson's arguments can be construed as a claim that the lack of specificity in the bill of particulars could subject him to multiple prosecutions. We therefore do not consider this ground for constitutional deficiency.

3. In camera review is the procedure that has been established for determining whether exculpatory material may be found within privileged information because it balances the defendant's need for evidence to defend himself against the witness's right to be free from intrusion into personal and private matters and the public's interest in preserving confidences of this type to ensure that persons are not discouraged from reporting crimes or from seeking professional help and disclosing all information needed to make that consultation as effective as possible. *See generally State v. Blake*, 2002 UT 113, ¶ 23, 63 P.3d 56 ("Despite the problems inherent in in camera review without the presence of counsel, such review represents a satisfactory method of balancing the interests of privacy and full reporting of crime with [a] defendant['s] ability to present the best case at trial." (emphasis omitted)).

stood what type of exculpatory information he was seeking and therefore failed to adequately examine the records.

¶6 At the hearing on Otterson's motion, his attorney told the court,

> We seek generally to know whether or not these allegations—the date these allegations were first made known to the therapist. It's my understanding that what's occurred is [Daughter] initially revealed alleged abuse to the therapist. The therapist then reported it. It was determined that those allegations did not—were not within the statute of limitations, and that there were other allegations then made.

Consequently, he sought a "time line as to when the allegations of abuse involving [Daughter] when she was under age 14" were revealed to the therapist in relation to when she first reported the abuse to the police. Counsel explained that he wanted this information because

> [Daughter] indicate[d] in the course of th[e] interview with the police officer that she had already confronted the defendant about the allegations that she had made, and that she would ... [have] been abused when she was over 14 years of age, and so ... our concern is that [at] that point, based on what we know of that conversation, ... [she had discovered] those allegations ... were limited by the statute of limitations. And after receiving that information, now she's back with a therapist at a later date, and this is when ... she tells him now[, "]I've been abused when I was only—when I was younger.["]

The trial court granted Otterson's motion in a ruling from the bench.[4] After reviewing Daughter's counseling records, the trial court entered a written ruling that described its understanding of what Otterson sought as "a time-line of disclosures of alleged sexual abuse incidents in order to apply [the] statutes of limitations." The court noted that Otterson had made the requested review

more difficult by having failed to supply the court with the date on which Daughter had made her report to police, the center point of the requested inquiry. Although the court was able to "discover the reporting date ... in the therap[y] records," it declined to provide Otterson with any information from the counseling records, having concluded that they "contain no material evidence helpful to the defense and, in fact, the opposite is true." *See generally State v. Worthen*, 2009 UT 79, ¶43, 222 P.3d 1144 (recognizing that it is the trial court's responsibility to determine whether the evidence is material, that is whether there is "a reasonable probability that, if the evidence [were] disclosed to the defense, the result of the proceeding [would] be different" (internal quotation marks omitted)). As a result, the court denied Otterson further access to the records and ordered them sealed.

¶7 Otterson now complains that the trial court erred in denying him access to the records because "it failed to recall what [he] had stated in oral arguments and was seeking." Having the benefit of the transcript—which the trial court did not—to compare what Otterson requested at the hearing with what the trial court understood that request to have been, it is at least arguable that the court's review did not entirely cover Otterson's request. While Otterson now assigns blame for any misunderstanding to the trial court as error, he must bear a significant measure of responsibility for the imprecision of his oral request. Otterson was in the best position to discern from the written ruling whether the court had understood the parameters of his request for review, and if he believed that the trial court had not accurately implemented his request, he had the burden of bringing any perceived error or misunderstanding to the trial court's attention so that the court had an opportunity to correct any error before trial. *See generally 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶51, 99 P.3d 801 ("[I]n order to preserve an

---

4. In its later written ruling, the trial court expressed considerable skepticism about whether it should have granted Otterson's motion for in camera review in the first place but noted that it had nonetheless decided to complete the records review in accordance with its previous ruling.

Because we resolve the issue on different grounds, we do not consider whether Otterson's request set forth an appropriate exception to the privilege under rule 506(d)(1) of the Utah Rules of Evidence.

issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (alterations in original) (internal quotation marks omitted)). Otterson failed to do this.

¶ 8 The trial court entered the written ruling explaining its understanding of what Otterson had asked it to look for in the counseling records on January 6, 2006, twenty months prior to the September 2007 trial. Otterson did not challenge the ruling, however, until he filed a motion for new trial on April 24, 2008, months after the trial had ended. Assuming, for purposes of appeal, that Otterson is correct that Daughter's counseling records contained exculpatory information to which he was entitled, he has provided no justifiable reason for waiting to bring what must have appeared to him at the time to be an obvious misunderstanding to the court's attention so that it could be corrected before trial. A defendant cannot simply take his chances at trial and then seek a new trial when the outcome is not what he desired. *Cf. State v. Williams*, 712 P.2d 220, 222–23 (Utah 1985) (affirming the denial of a motion for new trial based on newly discovered evidence where the "evidence ... was available to defendant but not obtained by him" or through due diligence could have been discovered prior to the time of trial). Therefore, because Otterson failed to preserve the issue, we do not address the substance of his claim that the trial court erred by not reviewing Daughter's counseling records for the information Otterson actually sought.

■ ¶ 9 Finally, Otterson claims that the trial court abused its discretion by admitting evidence of prior bad acts when the State had failed to provide him with the notice required by rule 404(b) of the Utah Rules of Evidence. *See generally* Utah R. Evid. 404(b) ("Evidence of other crimes, wrongs or acts ... [may] be admissible for other [noncharacter] purposes ..., provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice

in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the nature of any such evidence it intends to introduce at trial."); *State v. Killpack*, 2008 UT 49, ¶ 18, 191 P.3d 17 (stating that appellate courts review the trial court's admission of evidence under rule 404(b) for abuse of discretion). Otterson points out in his brief that the trial court ruled unequivocally that the State had not shown any justifiable basis for its failure to have given him the notice required by rule 404(b) and that, as a consequence, the State was not allowed to introduce other bad acts evidence at trial. Otterson argues that while the court then excluded evidence of alleged offenses against another young woman and prior bad acts against Daughter that were outside the time period specified in the amended information, it nevertheless allowed the State to present evidence of bad acts that Otterson had allegedly committed within that time period, in violation of both rule 404(b) and its own order. Otterson, however, has failed to identify any specific evidence that he claims the court wrongly admitted.

¶ 10 Otterson contends on appeal that identification of specific evidence is unnecessary because the 404(b) notice requirement is a per se rule that precludes admission of 404(b) evidence where the notice requirement, or its good cause exception, has not been satisfied. To support that contention, he relies on the advisory committee's notes to the 1991 amendment of the federal version of rule 404(b). *See generally* Fed.R.Evid. 404 advisory comm. notes (1991 amend.) ("Because the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides that the notice requirement has not been met.").[5] Otterson's interpretation of the 404(b) notice requirement finds support not only in the language of the commentary but arguably in the language of the rule itself, which makes notice mandatory unless excused by the court for good cause but does not directly address the consequences of noncompliance, *see* Fed.R.Evid.

---

5. The language of Utah's rule 404(b) is now identical to its federal counterpart, *see* Utah R. Evid. 404 (notes), though Utah has not included

the federal advisory committee commentary in its version of the rule.

404(b) (providing that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any [rule 404(b)] evidence it intends to introduce"); *accord* Utah R. Evid. 404(b). But we do not reach the issue because even if rule 404(b) requires exclusion of prior bad acts evidence when the State inexcusably fails to give appropriate notice, such an error by the trial court does not mandate reversal on appeal.

¶ 11 In the trial court, the rules of evidence and procedure must be followed to ensure the very best prospect for a fair trial, which is the operational goal of the judicial process. On appeal, however, the focus is not ongoing or prospective but historical, i.e., whether the trial that actually occurred was fair. In this regard, the requisite inquiry does not always end with a finding that there was error in the proceedings below because error of some sort (whether by the court or counsel) in such a complex endeavor may be unavoidable as a practical matter and not all errors are of equal significance. Rather, in many cases, including evidentiary rulings, the conclusion that error occurred requires a further determination of whether the error resulted in a certain level of prejudice to the defendant. For this reason, Utah appellate courts have long required a showing of harm to warrant reversal in the face of an erroneous evidentiary ruling. *See State v. Kohl,* 2000 UT 35, ¶ 17, 999 P.2d 7 ("We will reverse an erroneous evidentiary ruling only if, absent the error, there is a reasonable likelihood that there would have been a more favorable result for the defendant." (internal quotation marks omitted)); *accord State v. White,* 880 P.2d 18, 21 (Utah Ct.App.1994); *see also State v. Hamilton,* 827 P.2d 232, 240 (Utah 1992) (declining to consider whether evidence was admitted in violation of evidence rule 403 because any such error was harmless); *State v. Johnson,* 784 P.2d 1135, 1140 (Utah 1989) (concluding that error in admitting a prior conviction was harmless and therefore did not warrant reversal). The prejudice requirement is a salutary one that avoids the burdens imposed on parties and the courts, as well as on victims and witnesses, by the retrial of cases where an error has not resulted in material harm to the defendant. In this case, even if the admission of rule 404(b) evidence by the trial court was in error, reversal on appeal is not appropriate unless Otterson demonstrates that the error materially affected the fairness or outcome of the trial. Because he has failed even to identify the evidence he claims was wrongly admitted, he has not borne this burden. In the absence of the required showing, we must affirm.

¶ 12 Otterson has failed to meet his burden with respect to each of his claims. We therefore affirm the rulings of the trial court.

¶ 13 WE CONCUR: GREGORY K. ORME and MICHELE M. CHRISTIANSEN, Judges.